FILED

United States District Court
District of Connecticut

2003 OCT 31  A 10: 49

US DISTRICT COURT
BRIDGEPORT CT

John B. DeRay,

                  *Plaintiff*

v.

Russ Larson, *et al.*,

                  *Defendants.*

Civil Action No.

3:02 CV 2139 (JCH)

October 31, 2003

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT OTIS ELEVATOR COMPANY'S MOTION FOR SUMMARY JUDGMENT

*Introduction*

John B. DeRay has worked in the elevator industry for over twenty-five years,

most of that time in construction.  He understands that construction work can be

dangerous.  In fact, his complaint in this lawsuit refers to a fatality that occurred when

an operating engineer assigned to operate a hoist fell to his death at the same worksite

involved in this lawsuit.  Nevertheless, because of some perceived insult in the manner

in which his supervisor directed him to comply with a clear rule regarding the wearing

of fall protection equipment while working on construction for Otis Elevator Company,

he refused to do so.  He refused after a warning from Russ Larson, his supervisor.  He

refused after a warning from Jeff Hastings, Otis's  General Manager.  He refused after

1

receiving a written memorandum reiterating and reenforcing the rule. He refused after he was warned by his union business manager. Faced with this clear and continuing insubordination with regard to a safety matter of vital importance, Otis Elevator Company terminated DeRay's employment. There was just cause for doing so.

Despite the reference in the complaint to 42 U.S.C. § 1983, this is not a civil rights case. This is a so-called "hybrid" action under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a), which provides individual employees a federal cause of action for breach of a collective bargaining agreement (CBA) where the employee can also allege and prove that his union breached its duty of fair representation. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983) As this memorandum will demonstrate, Otis Elevator Company is entitled to summary judgment because the undisputed material facts show that 1) Otis did not breach the collective bargaining agreement, 2) the union did not fail in its duty to represent DeRay; 3) DeRay failed to exhaust the remedies available to him under the CBA, and 4) DeRay waited too long to file this suit.

2

## STATEMENT OF THE FACTS

The facts on which Otis Elevator Company relies in support of its motion for summary judgment are set forth in the separately-filed Local Rule 56(a)(1) statement of undisputed material facts. Those facts can be summarized as follows:

The plaintiff, John DeRay, has worked as a union employee in the elevator construction industry for twenty-five years. In that industry, workers generally are assigned work by referral from the union to an employer who has a need for workers. DeRay was referred to Otis for work in 2001, including work on a construction site at the Mohegan Sun casino in Connecticut. Otis sets a high priority on workplace safety. Thus, before reporting for work at Mohegan Sun, DeRay was required to complete Otis's safety course and examination, which he did. He also reviewed Otis's Employee Safety Handbook, which provides, in part, that "on construction, a safety harness or fall protection uniform and shock absorbing lanyard shall be worn at all times."

At the Mohegan Sun site, DeRay was assigned, from time to time, to operate elevators that had been installed by Otis as part of the construction project. The elevators were working in normal fashion, but had not been finally accepted by the customer. Under these circumstances, DeRay believed the rule regarding the wearing of fall protection equipment was unreasonable. When he complained about the requirement in November 2001, his supervisor, Russ Larson directed him to continue

3

to wear a safety harness. Later that month DeRay was again told by Larson to wear the equipment, but DeRay was offended by the manner in which Larson told him. As a result, DeRay refused to wear the safety harness. Larson again told him he had to wear the equipment or his job would be in jeopardy. Nevertheless, DeRay continued to refuse the directive. Jeff Hastings, Otis's General Manager, warned DeRay again in December that continued refusal could result in the termination of his employment. On January 28, 2002, Russ Larson issued a written memorandum reminding employees, including DeRay, of the safety requirement. DeRay continued in his refusal to submit to that requirement. On February 5, 2002, DeRay was told by Dominic Accarpio, the union business manager, that unless he complied with Otis's safety rule, he would be fired. DeRay continued to refuse and on February 6, 2002, Russ Larson terminated DeRay's employment.

After his employment was terminated, DeRay had ten working days within which to bring a grievance under the collective bargaining agreement (CBA). That time limit expired on February 20, 2002. During those ten days no grievance was present-ed to Otis by DeRay or by the Union on DeRay's behalf. However, two days later, DeRay wrote a letter, with a copy to Russ Larson and Jeff Hastings, indicating his intention to file a lawsuit over this issue. The lawsuit was filed over nine months later, on December 4, 2002.

4

ARGUMENT

### *Standard for Granting Summary Judgment*

In considering summary judgment, the standards to be applied have been well settled since the 1986 Supreme Court trilogy. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] In ruling on a motion for summary judgment,

> [a] judge must ask himself not whether he thinks the evidence unmis-
> takably favors one side or the other but whether a fair minded jury could
> return a verdict for the [nonmovant] on the evidence presented. The
> mere existence of a scintilla of evidence in support of the [nonmovant's]
> position will be insufficient; there must be evidence on which the jury
> could reasonably find for the [nonmovant].

*Anderson*, 477 U. S. at 252.

The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 586. That burden may be satisfied by "pointing out" the absence of evidence to support the nonmovant's

---

[1] Fed R. Civ. P. 56(c).

5

shall show affirmatively that the affiant is competent to testify to the matters stated therein."

In addition, once the movant has established a *prima facie* case showing the absence of a genuine issue of material fact, "the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S. Ct. 152 (1991) (quoting *Matsushita*, 475 U.S. at 586). The required showing by the nonmovant is "heightened when the 'factual context renders [a] claim implausible.'" *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986), *cert denied*, 479 U.S. 1088 (1987) (quoting *Matsushita*, 475 U.S. at 587). In such circumstances, "more persuasive evidence . . . than would otherwise be necessary" must be adduced. *Id.* Similarly, the "mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985). If no rational fact finder could find in the nonmovant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *Anderson*, 477 U.S. at 251-52; *Matsushita*, 475 U.S. at 587. Rather than resting upon "'mere conclusory allegations or denials' as a vehicle for obtaining a trial," the

7

nonmoving party "must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). If upon review of the record, however, "'a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.'" *Suburban Propane v. Proctor Gas. Inc.*, 953 F.2d 780, 788 (2d Cir. 1992) (quoting *Binder v. Long Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)).

Using these principles, it is plain that DeRay has no evidence to support any claims for relief and summary judgment is appropriate.

I.   ***DeRay's Suit Must be Dismissed Because There Was No Breach of the Collective Bargaining Agreement When Otis Terminated His Employment for His Repeated and Willful Refusal to Abide by Published Safety Rules***

Unlike many collective bargaining agreements, the CBA between Otis and the IUEC does not contain an explicit provision limiting the company's right to discharge employees only for "just cause." However, many arbitrators would imply a "just cause" limitation into any collective bargaining agreement, [2] and that standard is appropriate in this case. "Courts have only rarely been called upon to interpret just

---

[2]  *See,* ELKOURI & ELKOURI, HOW ARBITRATION WORKS 886 (Marlin M. Volz & Edward P. Goggin eds., 5th ed. BNA 1997)

8

cause provisions. These issues arise almost exclusively before arbitrators. Normally the courts enter the determination only to review for purpose of enforcement."[3] When it is necessary to do so, however, courts are to interpret the CBA in accordance with federal common law rather than state law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456-57 (1957)

"Just cause is a flexible concept, embodying notions of equity and fairness."[4] In insubordination cases like this one, arbitrators have considered such matters as whether a rule is reasonable and whether the employee had notice of the consequences of violation.[5] For example, in *Chanute Mfg. Co.*,[6] the employer was found to have just cause to discharge an employee for failing properly to wear a safety belt where the employee was repeatedly instructed by his foreman, was warned that if he did not comply he would be sent home and was finally given an ultimatum to comply or be discharged:

---

[3] *S.J. Groves & Sons Co. v. Teamsters Local 627*, 581 F.2d 1241, 1245 n.6 (7th Cir. 1978)

[4] *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1242 (7th Cir. 1997), *citing Arch of Illinois v. District 12, United Mine Workers*, 85 F.3d 1289, 1294 (7th Cir. 1996).

[5] *See, e.g.*, DISCIPLINE AND DISCHARGE IN ARBITRATION, 31-32 (Norman Brand, ed. BNA 1998)

[6] 99 LA 20 (BNA 1992) (Arbitrator Levy) (copy attached)

The grievant's refusing to comply with established safety rules and the instructions of duly authorized personnel and failing to provide a reasonable explanation for his refusing constituted insubordination and clearly gave the company "just cause" to discipline or discharge him pursuant to [the CBA]. Furthermore, the weight of the evidence indicates that, in discharging the grievant, the company did not act discriminatorily or capriciously. Rather, the company's action was a justifiable response to the recalcitrance exhibited by the grievant. A company cannot afford to keep employees who will not respond to instructions and do their work properly in compliance with important safety rules.[7]

The present case is not unlike the Seventh Circuit's *Crider* case, *supra* note 4. In *Crider*, the employee was discharged for refusing to take a back-to-work drug test. The Court found that "*Crider* believed that while other employees may have to obey orders, he could disobey any order that he thought was wrong." *Crider, supra* at 1243. So, too, did DeRay:

Q.  What did you say to Russ Larson?

A.  What you have done on November 27th was turn a joke into a confrontation in front of the entire crew. Supervisors should be aware of zero tolerance policies, and because of what you did, it just goes against my grain to put this harness on because it serves no purpose. And until you can give me in writing where Otis has a policy that requires union workers to wear unnecessary equipment which is of no help to them or is not for safety, I'm not going to wear this harness.[8]

In *Crider*, the Seventh Circuit concluded:

---

[7] *Id.* at 22-23

[8] DeRay deposition at p. 52.

10

Crider acted as a law unto himself, deciding which orders to obey and which to refuse. And he aggressively challenged his supervisor's authority because he found some sort of pleasure in that conflict. Spectrulite – like any company – cannot be expected to function efficiently with an employee who acts like Crider, and federal labor law does not require it to try. As a matter of law, Spectrulite had just cause to fire Crider for his insubordination.[9]

In the present, similar situation, Otis had just cause to fire DeRay.

II.   ***DeRay's Suit Must be Dismissed Because The Union Did Not Breach its Duty of Fair Representation***

In order to prevail against Otis Elevator Company in this hybrid §301 suit, DeRay must prove not only that the Company breached the CBA by discharging him without just cause, he must also allege that he was unable to obtain relief through the contractually mandated grievance and arbitration machinery because his collective bargaining representative, the union, breached the duty of fair representation that it owed to him. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-65, 571-72 (1976); *Vaca v. Sipes,* 386 U.S. 171, 185-86 (1967); *McKee v. Transco Prods., Inc.,* 874 F.2d 83, 86 (2d Cir. 1989). [10]   As demonstrated in the preceding argument,

---

[9]  *Crider, supra* at 1243.

[10]  *See also, Balestracci v. General Dynamics Corp.* , 221 F. Supp. 2d 258, 266 (D. Conn. 2002):

. . . because plaintiff asserts a "hybrid" LMRA claim, plaintiff must demonstrate a breach of the CBA by [his employer] as well as a breach of the duty of fair

(continued...)

11

DeRay cannot prove that he was discharged without just cause. However, even if that were not the case, DeRay cannot prove that the union breached its duty of fair representation. Rather, the record shows that the Union advised DeRay repeatedly regarding the requirement to comply with the company's safety rules and specifically warned him that a continued refusal would result in discharge. After DeRay's discharge, the union properly considered his informal, scattershot complaints as they became aware of them and reasonably concluded that DeRay was wrong in his actions and that discharge was warranted.

Otis Elevator Company incorporates herein by reference the arguments of the IUEC and IUEC Local 91 with regard to the duty of fair representation issue.

III. ***DeRay's Claim for a Breach of the Collective Bargaining Agreement Must Be Dismissed Because He Failed to File Suit Within Six Months After His Cause of Action Arose***

In *Ycaza v. CT Transit-Stamford Division* , ___ F. Supp. 2d ___ , 2003 WL 22427762 (D. Conn. 2003) (copy attached), this Court reviewed the time limits applicable to a case such as this:

---

[10] (...continued)
representation by his union in order to prevail on his LMRA, § 301 claim against GD. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163-65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); White v. White Rose Food, 237 F.3d 174, 178 (2d Cir.2001).

12

> As the Supreme Court stated in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), hybrid claims under Section 301 against an employer for breach of a collective bargaining agreement are subject to the six month time limit of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). "The mere presence of an arbitration clause is sufficient to render an employee's claim a hybrid claim and subject it to a six month statute of limitation." *United Auto., Aerospace and Agricultural Implement Workers v. R.E. Dietz Co.*, 996 F.2d 592, 596 (2d Cir.1993) (citing *McKee v. Transco Products*, 874 F.2d 83, 87 (2d Cir.1989). . . . The six-month period begins to run when the plaintiff "discovers, or in the exercise of reasonable diligence, should have discovered, the acts constituting the breach of duty." *Wilhelm v. Sunrise Northeast*, 923 F. Supp. 330, 337 (D.Conn.1995)

The collective bargaining agreement under which DeRay purports to sue has an arbitration clause, thus this suit is subject to a six month statute of limitations. The remaining question is when that period begins to run in this case. The most reasonable date would appear to be February 22, 2002. On that date DeRay wrote a letter stating his intent to file a lawsuit against Otis and the Union over the matters on which he has brought this case. The six-month limitations period that began on that date expired on August 22, 2002. This suit was not filed for over another three months. It is clearly time barred.

IV.  **DeRay's Claim for a Breach of the Collective Bargaining Agreement Must Be Dismissed Because He Failed to Exhaust Available Grievance Procedures Before Filing Suit**

In the same, recent *Ycaza* case, this Court also noted:

> The plaintiff must exhaust available grievance procedures before bringing a Section 301 claim. *See Wheeler [v. Graco Trucking Corp.]*, 985 F.2d at 112; *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir.1990). "Federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). "Unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf." *Id.*

Here, the CBA required that a grievance be presented at the "oral step" no later than ten working days after the termination occurred, *i.e.*, no later than February 20, 2002. That was not done. The only thing DeRay did in those ten days was to write a letter dated February 12, 2002 addressed to "National Arbitration Committee." It is unclear to whom the letter actually was sent, if anyone. [11] What is clear from DeRay's deposition is that he knew this letter was not the first thing that was required to process a grievance. As he testified:

---

[11]  That letter is attached as an exhibit to DeRay's complaint, but he makes no reference to it in the allegations of his complaint. At his deposition, DeRay said he "left a copy with [union business manager] Dominic Accarpio," and "left a couple of copies at the Otis office." (DeRay deposition at p. 74).

14

Q.    So, you never requested an oral step meeting between the union, the company, and yourself with regards to your termination?

A.    Let me see something.  Specifically asking for an oral step on the termination, no.  I believe I went directly to this letter of February 12th."[12]

Thus, DeRay tried to circumvent the required contractual grievance procedure and take matters in his own hands to the National Arbitration Committee, a process that is not permitted by the CBA.  In acting in this fashion, DeRay failed properly to invoke the grievance procedure at the oral step and, thus, failed to exhaust available remedies under the contract.  In these circumstances, DeRay cannot pursue a Section 301 claim.

Respectfully submitted,

Edward J. Dempsey
Labor Counsel
United Technologies Corporation
One Financial Plaza
Hartford, CT 06101
tel:    (860) 728-7858
fax:    (860) 728-6551
email: ed.dempsey@utc.com
Bar No. ct05183

---

[12]  (DeRay deposition at p. 80)

15

Certificate of Service

        I, Edward J. Dempsey, hereby certify that a copy of the foregoing Memorandum
of Law in Support Of Defendant Otis Elevator Company's Motion For Summary
Judgment was served on all parties by mailing a copy thereof this 30th day of October
2003 to all counsel of record and the plaintiff, appearing pro se:

        J. William Gagne, Jr.            John B. DeRay
        J. William Gagne & Assoc.        1078 New Britain Avenue
        1260 Silas Deane Highway         Apt. 104
        Wethersfield, CT 06109           West Hartford, CT 06110

        Robert Matisoff
        Keith R. Bolek
        O'Donoghue & O'Donoghue
        4748 Wisconsin Avenue, NW
        Washington, DC 20016

                                    _____
                                          Edward J. Dempsey