FILED

2003 NOV 26  P 3: 16

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DeRAY,<br>    Plaintiff<br><br>VS.<br><br>RUSS LARSON, JEFF HASTINGS, ERNEST<br>LOWE, OTIS ELEVATOR, RONALD<br>KOERBEL, DOMINIC ACCARPIO, INT'L<br>UNION OF ELEVATOR CONSTRUCTORS,<br>    Defendants | :<br>:  CIVIL ACTION NO.<br>:  3:02 CV 2139 (JCH)<br>:<br>:<br>:<br>:<br>:<br>:<br>:  NOVEMBER 26, 2003 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT INTERNATIONAL**
**UNION OF ELEVATOR CONSTRUCTORS, LOCAL 91**

Pursuant to D.Conn. L.Civ.R. 7(a) and 56, defendant International Union of Elevator Constructors, Local 91 [hereinafter the "Union"] respectfully submits this memorandum of law in support of its motion for summary judgment.

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

At all times relevant hereto, the plaintiff, John DeRay, was a member of the Union. Deposition of John DeRay, dated September 4, 2003 [hereinafter "DeRay"], at 97. At all times relevant hereto, the Union and Otis were parties to a collective bargaining agreement [hereinafter the "CBA"], which CBA included certain agreed-upon provisions with respect to the filing and processing of grievances. DeRay Ex. 4 at Article XV, Arbitration, pp.59-65.

Prior to February 6, 2002, the plaintiff was an employee of Otis Elevator Company [hereinafter "Otis"]. DeRay at 9-10. Also prior to February 6, 2002, the plaintiff was employed at "on construction," DeRay Ex. 6. During the period of the plaintiff's employment at Otis, Otis maintained a safety policy which provided, inter alia, that for those employees working "[o]n construction, a safety harness or fall protection uniform and shock absorbing lanyard shall be

worn at all times. . . ." DeRay at 12-13; DeRay Ex. 3 at 53-54. The Otis safety policy with respect to safety harnesses and fall protection uniforms and shock absorbing lanyards contains certain exceptions, none of which applied to the site at which the plaintiff was employed or the circumstances of his employment. DeRay Ex. 6. The plaintiff was aware of this policy. DeRay at 13.

In September, 2001, the plaintiff's supervisor, Russ Larson, instructed the plaintiff to wear a safety harness while operating the elevator on the Mohegan Sun job site where he was working. DeRay at 20. Mr. Larson required all Otis employees, including all mechanics or helpers, who operated an elevator at the Mohegan Sun job site to wear safety harnesses. DeRay at 38. The plaintiff disagreed with this policy and refused to comply with it. DeRay at 33, 43; DeRay Ex. 5 at 2.

On or about November 27, 2001, the plaintiff and Mr. Larson were involved in an incident arising out of the plaintiff's refusal to wear a safety harness. DeRay Ex. 5. The plaintiff indicated that Mr. Larson told him at that time that if the plaintiff took off the safety harness, Mr. Larson would fire him. DeRay Ex. 5.

The plaintiff did not discuss his grievance with respect to the policy with Dominic Accarpio, business manager of the Union, within ten (10) working days after the cause of the grievance became known to the plaintiff. DeRay Ex. 4 at 60.

The plaintiff met with Mr. Larson on December 4 or December 5, 2001. DeRay at 57. Neither defendant Dominic Accarpio, business manager of the Union, nor defendant Ronald Koerbel, regional director of defendant International Union of Elevator Constructors, AFL-CIO [hereinafter the "International"], was present at the plaintiff's meeting with Mr. Larson, notwithstanding the provisions of Article XV ¶ 2 of the CBA. DeRay at 57; DeRay Ex. 4 at 60.

The plaintiff had not asked that either Mr. Accarpio or Mr. Koerbel, or any other representative of the Union or the International, attend the meeting between the plaintiff and Mr. Larson. DeRay at 58.

On December 10, 2001, the plaintiff left a written document on Mr. Accarpio's desk. DeRay at 63; DeRay Ex. 5. If a Union member wishes to file a grievance, the procedure is that the member contacts Mr. Accarpio, who files the grievance electronically on the member's behalf. Affidavit of Dominic Accarpio [hereinafter "Accarpio"] at ¶ 8. The December 10, 2001 document did not comply with the provisions of the CBA at Article XV ¶ 3. DeRay Ex. 4 at 60-61; DeRay Ex. 5. Prior to drafting the December 10, 2001 document, the plaintiff had read Article XV of the CBA. DeRay at 57. The December 10, 2001 document did not identify the "alledged policy" which was at issue. DeRay Ex. 5.

By memorandum dated January 28, 2002, Mr. Larson issued a written memorandum to all construction personnel, with a copy to Mr. Accarpio, reiterating the rule regarding safety harnesses and every exception thereto. DeRay Ex. 6. The plaintiff received a copy of the January 28, 2002 memorandum. DeRay at 69.

Thereafter, on February 5, 2002, Mr. Accarpio visited the job site and spoke with all of the Union members who were running elevators at the site, including the plaintiff. He told them that they were required to comply with Otis' safety policy regarding the use of safety harnesses. Accarpio at ¶ 17. Mr. Accarpio specifically told the plaintiff that failure to wear the safety harness could result in the termination of the plaintiff's employment. DeRay at 70-71.

Notwithstanding Mr. Accarpio's warning, the plaintiff continued to refuse to wear a safety harness. DeRay at 71.

By letter dated February 6, 2002, Otis terminated the plaintiff's employment "[b]ecause [he] continue[d] to violate the Otis safety policy regarding harnesses on construction sites. . . ." DeRay at 72; DeRay Ex. 7.

The plaintiff's employment with Otis was terminated for cause, to wit, refusal to wear a safety harness despite clear and unequivocal statements, both from Otis and from Mr. Accarpio, that the plaintiff was required to wear such harness. DeRay Ex. 7; Accarpio at ¶¶ 17-18.

The plaintiff never asked for an oral step meeting with respect to the termination of his employment pursuant to Article XV ¶ 2. DeRay at 80. On February 12, 2002, the plaintiff asked a Union secretary to type a document for him addressed to the "National Arbitration Committee." DeRay at 73-74; DeRay Ex. 8. The February 12, 2002 document purportedly relied upon so much of Article XXII ¶ 4(e) of the CBA as provides that "[s]uch a termination [for unsatisfactory performance by an employee who is to be replaced] may be submitted as a grievance to the National Arbitration Committee as provided under Article XV as a final source of appeal." DeRay Ex. 8. The provision quoted by the plaintiff does not authorize a grievant to disregard the provisions of Article XV providing for the oral step, written step one, or written step two. DeRay Ex. 4 at 60-61. The plaintiff did not ask for an oral step meeting with respect to the termination of his employment, nor did he advise the Union that he wished to file a written grievance with respect to the termination of his employment. Accarpio at ¶¶ 11-14.

In his document dated February 22, 2002, the plaintiff indicated his intent to sue Messrs. Accarpio and Koerbel, as well as Otis, the Union, and the International. DeRay at 82-83. Such document reflected the plaintiff's intent to sue these defendants on the same grounds as those asserted in his complaint in this matter. DeRay at 84.

4

On March 14, 2002, a meeting was held with the plaintiff, Mr. Accarpio, and Mr. Koerbel, at which time these parties discussed the plaintiff's claim. Accarpio at ¶ 15. Also on March 14, 2002, a meeting was held with Messrs. Accarpio and Koerbel and Ernest Lowe, the labor relations officer of Otis. Accarpio at ¶¶ 16-17. During the meeting with Messrs. Accarpio, Koerbel, and Lowe, it was established that (a) the plaintiff had been aware of the Otis safety policy regarding safety harnesses, (b) the plaintiff had been warned, both by Otis and by Mr. Accarpio, that failure to comply with the policy would result in the termination of his employment, (c) the plaintiff had received a copy of the January 28, 2002 memorandum, and (d) the plaintiff nonetheless willfully refused to wear a safety harness. On the basis of these conclusions, the parties agreed that the plaintiff's termination had been just and that pursuit of any grievance would be fruitless. Accarpio at ¶ 17-18.

Subsequent to the March 14, 2002, meeting, the plaintiff was advised orally that it was the opinion of the Union and/or the International that the termination of his employment had been just and that no grievance would be pursued on his behalf. Accarpio at ¶ 19.

On May 23, 2002, a meeting was held involving the plaintiff, Union member Judd White, Mr. Accarpio, and Mr. Koerbel, at which time the plaintiff reiterated his refusal to wear a safety harness. DeRay at 83-84. During the May 23, 2002, meeting, Mr. Koerbel informed the plaintiff that his grievance had no merit, because the plaintiff had been instructed to comply with Otis' safety policy regarding safety harnesses and the plaintiff had refused to do so. Affidavit of Ronald Koerbel [hereinafter "Koerbel"] at ¶ 27.[1]

The instant case was filed on December 4, 2002. DeRay at 9.

---

[1] The original affidavit is attached to the motion for summary judgment filed by the International and Mr. Koerbel on October 31, 2003. A copy of such affidavit is attached hereto for the convenience of the Court.

5

## II. ARGUMENT

### A. Standards for summary judgment.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(e); Manning v. CIGNA Corporation, 807 F.Supp. 889, 892 (D.Conn. 1991). A factual issue is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if it "might affect the outcome of the suit under the governing law." Id. at 255. In deciding whether a genuine issue of material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party. Id. "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law. . . ." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) [ellipses in original; internal quotation marks and citations omitted].

The initial burden is on the moving party to show that there are no relevant facts in dispute. Celotex, 477 U.S. at 323. To defeat a properly supported motion for summary judgment, however, "the plaintiff must present affirmative evidence . . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257. "The mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Fax

Telecommunicaciones Inc. v. AT & T, 138 F.3d 479, 485 (2d Cir. 1998) [emphasis and ellipses in original; internal quotation marks and citations omitted].

> In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed.R.Civ.P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on the allegations in his pleading, ... or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible, see, e.g., L & L Started Pullets, Inc. v. Gourdine, 762 F.2d 1, 3-4 (2d Cir.1985); Wyler v. United States, 725 F.2d 156, 160 (2d Cir.1983). The motion "will not be defeated merely ... on the basis of conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S. Ct. 152, 116 L.Ed.2d 117 (1991).

Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) [some internal citations omitted]. "If the undisputed facts reveal that there is an absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute with respect to other elements becomes immaterial and cannot defeat the motion." Id. at 519.

The fact that a plaintiff is proceeding pro se does not relieve him of the obligation to allege sufficient facts upon which a recognized legal claim could be based. Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115, 119 (D.Conn. 1998).

> **B.  The plaintiff has failed to allege, and cannot prove, a viable claim for breach of the duty of fair representation against the Union.**

The record of this case is unusually clear: the plaintiff willfully disregarded warnings by his employer and the Union that his failure to wear a safety harness would result in the termination of his employment, and he refused to wear the harness. After the plaintiff's employment was terminated for failure to wear the harness, the plaintiff purportedly invoked the

grievance procedures set forth in the CBA.[2] The Union refused to pursue the plaintiff's claim on the ground that the claim lacked merit. The plaintiff has not alleged otherwise. Because the plaintiff has not alleged, and cannot prove, that the Union breached its duty of fair representation, summary judgment should enter on behalf of the Union.

A union breaches its duty of fair representation to a client "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967); Labbe v. Hartford Pension Commission, 239 Conn. 168, 194 (1996).

"Arbitrary or bad-faith conduct . . . or substantial evidence of fraud, deceitful action or dishonest conduct . . . is required to show a breach of the duty of fair representation." Cruz v. Local Union No. 3 of the Int'l. Bhd. of Electrical Workers, 34 F.3d 1148, 1154 (2d Cir. 1994), quoting Ryan v. New York Newspaper Printing, 590 F.2d 451, 455 (2d Cir. 1979) [ellipses in Cruz]. "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz, 34 F.3d at 1153-54. As long as the Union acted in good faith, the Court may not intercede on the part of an employee who may have been prejudiced by a rationally founded decision. Cook v. Pan American World Airways, Inc., 771 F.2d 635, 645 (2d Cir. 1985).

In order for a union's actions to be arbitrary such that it breaches the duty of fair representation, the union's conduct must be "so egregious, so far short of the minimum standards

---

[2] As set forth in Section II.D, below, the plaintiff did not exhaust his administrative remedies; notwithstanding, to the extent that any of the documents he submitted is considered a proper grievance, the Union did not breach its duty of fair representation in refusing to take such grievance to arbitration.

8

of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." <u>Barr v. United Parcel Service, Inc.</u>, 868 F.2d 36, 43 (1989). "A union's action are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." <u>Labbe</u>, 239 Conn. at 195, quoting <u>Air Line Pilots v. O'Neill</u>, 499 U.S. 64, 67, 111 S. Ct. 1127, 113 L.Ed.2d 51 (1991) [internal quotation marks omitted, ellipses in <u>Labbe</u>]. In order for a union's actions to be in bad faith such that the duty of fair representation is breached, such actions must involve fraudulent, deceitful or dishonest conduct. <u>Int'l. Union of Electrical Workers v. NLRB</u>, 41 F.3d 1532, 1537 (D.C. Cir. 1994). Mere negligence or tactical errors on the part of the Union in processing a grievance do not constitute a breach of the duty of fair representation. <u>Barr v. United Parcel Service</u>, 868 F.2d 36, 43-44 (2d Cir. 1989); <u>Murphy v. Air Transport Local 501</u>, 123 F.Supp.2d 55, 58 (D.Conn. 2000); <u>Fleming v. The Stop & Shop Supermarket Co.</u>, 36 F.Supp.2d 87, 90-91 (D.Conn. 1999).

The plaintiff has neither alleged nor testified to any facts which would support a claim that the Union's decision not to contest his termination was justified was arbitrary, discriminatory or in bad faith. His position is clear: he feels that he should have had the right to decide for himself whether he needed to wear a safety harness and, therefore, Otis was wrong to terminate his employment for his refusal to wear the harness. The relevant facts are clear and undisputed:

1    The plaintiff was told repeatedly, by employees of Otis and by Mr. Accarpio, orally and in writing, that he was required to wear a safety harness and that if he did not do so, his employment would be terminated;

2.    The plaintiff refused nonetheless to wear a safety harness;

9

3.   The plaintiff's employment was terminated for his refusal to wear a safety harness.

On the basis of this history, the Union determined that Otis' termination of the plaintiff's employment was just and, therefore, any grievance with respect to the plaintiff's firing lacked merit. Accarpio at ¶ 18. This determination was entirely within the Union's prerogative. "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance. . . ." Cruz, 34 F.3d at 1153-54.

In the seminal case on the duty of fair representation, Vaca v. Sipes, 386 U.S. 171, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967), the U.S. Supreme Court reversed a finding that the union in that case had breached its duty of fair representation where the union had made a determination that pursuit of the grievance would be fruitless. The Court acknowledged the fact that "[i]n administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances." Id. at 194, 87 S. Ct. at 919. The Court noted some of the policies underlying this principle:

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d), supra, if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does

> not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration.

Id. at 191-92, 87 S. Ct. at 917-18 [internal footnote omitted]. Accordingly, the Court held, "Having concluded that the individual employee has no absolute right to have his grievance arbitrated under the collective bargaining agreement at issue, and that a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious, we must conclude that that duty was not breached here." Id. at 194-95, 87 S. Ct. at 919.

In the instant case, no claim can even be made that the underlying grievance—if it can be called a grievance—was meritorious. The plaintiff has never wavered from his original claim that he believed that Otis' policy regarding safety harnesses was wrong and, therefore, he ought to be free to disregard it. DeRay Ex. 9. Despite the fact that both Otis and the Union repeatedly told him otherwise, he elected to ignore the policy and the warnings. The Union decided not to proceed with the plaintiff's alleged grievance solely on the basis of its lack of merit. Accarpio at ¶ 18. Therefore, even if one or more of the written documents submitted by the plaintiff is somehow deemed to be a proper grievance, there exists, nonetheless, no basis upon which a reasonable jury could return a verdict in favor of the plaintiff for breach of the duty of fair representation.

Under the circumstances, it is abundantly clear that the Union did not breach its duty of fair representation to the plaintiff. Therefore, the Union respectfully asks that summary judgment enter in its favor.

C. **<u>Even if the plaintiff had alleged and could prove an otherwise viable claim for breach of the duty of fair representation, such claim would be time-barred.</u>**

The plaintiff's complaint, construed in the manner most favorable to him and as amended pursuant to the order of this Court on November 10, 2003, purportedly alleges a hybrid claim under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185[3] and a claim for breach of the duty of fair representation. As set forth in Section II.B, above, the plaintiff has failed to allege, and cannot prove, a viable claim for breach of the duty of fair representation. Even if he could do so, however, such a claim would be barred by the applicable statute of limitations, and so summary judgment should enter in favor of the Union.

It is well-settled that claims for a breach of the duty of fair representation are subject to a six-month statute of limitations. <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." <u>Cohen v. Flushing Hosp. and Medical Center</u>, 68 F.3d 64, 67 (2d Cir. 1995) [internal brackets, quotation marks and citation omitted]; <u>see also</u> <u>Ycaza v. CT Transit-Stamford Division</u>, ___ F.Supp.2d ___, 2003 WL 22427762 at *2 (D.Conn. 2003); <u>Wilhelm v. Sunrise Northeast</u>, 923 F.Supp. 330, 337 (D.Conn. 1995).

The Union recognizes that some question may exist as to the precise date on which the plaintiff was informed that the Union would not be pursuing his grievance, <u>e.g.</u>, whether the

---

[3] The plaintiff refers in his Motion to Add or Change Complaint, filed October 6, 2003, to "29 USCS See 1985 liabilities and restrictions on labor and management suites by and against labor organizations." The Union assumes for purposes of this motion that the plaintiff intended to refer to 29 U.S.C. § 185, since none of the other bases for jurisdiction, as set forth in the original complaint, could support a claim against the Union.

12

plaintiff was apprised of this fact immediately after the March 14, 2002 meeting or whether some days passed before the information was relayed. Regardless, the record is clear that the latest possible date on which the plaintiff can claim to have discovered that the Union would not be pursuing his grievance is May 23, 2002, the date on which Mr. Koerbel informed him that his grievance had no merit. Koerbel at ¶ 27. Therefore, the plaintiff was required to file this lawsuit no later than November 23, 2002. This case was filed on December 4, 2002; therefore, even if the plaintiff had alleged and could prove an otherwise viable claim for breach of the duty of fair representation, such claim would be time-barred.

Accordingly, the Union respectfully asks that this Court enter summary judgment in its favor.

### D.    The plaintiff failed to exhaust his administrative remedies, because he did not follow the grievance procedures set forth in the CBA.

"[A]n employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. . . . Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement." DelCostello, 462 U.S. at 163-64, 103 S. Ct. at 2290. A plaintiff's failure to exhaust administrative remedies bars the Court's consideration of a § 301 claim. Ycaza, 2003 WL 22427762 at *2, quoting Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L.Ed.2d 580 (1965).

In the instant case, it is abundantly clear that the plaintiff did not exhaust the administrative remedies set forth in Article XV, but rather, that he decided to construct his own grievance procedure. The record reflects that he did not invoke the oral step within ten (10) days of the termination of his employment. DeRay at 80; Accarpio at ¶ 11. The only thing he did within that ten-day period was to draft a letter to the National Arbitration Committee. DeRay at 73-74; DeRay Ex. 8. The plaintiff claims that he left a copy with Mr. Accarpio and that he "left

a couple of copies at the Otis office." DeRay at 74. He did not, however, contact Mr. Accarpio and ask that a grievance be filed on his behalf. Accarpio at ¶¶ 7, 8, 12.

The plaintiff testified that he was familiar with the provisions of Article XV. DeRay at 57. Nonetheless, in the same way that he attempted to make his own rules about the safety harness, he tried to create his own version of the grievance process. In so doing, however, he failed to invoke and exhaust the administrative remedies available to him under the CBA.

Therefore, the plaintiff's claim is barred, and summary judgment should enter in favor of the Union.

### III. CONCLUSION

For the reasons set forth above, defendant International Union of Elevator Constructors, Local 91 respectfully asks that this Court grant summary judgment in its favor.

                              DEFENDANT INTERNATIONAL UNION OF
                              ELEVATOR CONSTRUCTORS, LOCAL 91

                              By_____
                              William Gagne, Jr., Esq.
                              Gagne & Associates, P.C.
                              1260 Silas Deane Highway
                              Wethersfield, CT 06109
                              (860) 522-5049
                              Federal Bar No. ct02126

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed via first-class mail, postage prepaid, on November 26, 2003, to all counsel and pro se parties of record, as set forth below:

Mr. John B. DeRay
1078 New Britain Avenue, Apt. 104
West Hartford, CT  06110

Robert Matisoff, Esq.
Keith R. Bolek, Esq.
O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, N.W.
Washington, DC  20016

Edward J. Dempsey, Esq.
United Technologies Corp.
United Technologies Building
Hartford, CT  06101

_____
J. William Gagne, Jr., Esq.