UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DeRAY, | : | 2003 NOV 26  P 3: 16 |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:02 CV 2139 (JCH) |
| VS. | : | |
| | : | |
| RUSS LARSON, JEFF HASTINGS, ERNEST | : | |
| LOWE, OTIS ELEVATOR, RONALD | : | |
| KOERBEL, DOMINIC ACCARPIO, INT'L | : | |
| UNION OF ELEVATOR CONSTRUCTORS, | : | |
| Defendants | : | NOVEMBER 26, 2003 |

## STATEMENT PURSUANT TO D.CONN., L.CIV.R. 56(a) IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, LOCAL 91

Pursuant to D.Conn., L.Civ.R. 56(a), defendant International Union of Elevator Constructors, Local 91 [hereinafter the "Union"], submits the following statement of undisputed material facts:

1.      At all times relevant hereto, the plaintiff, John DeRay, was a member of the Union. Deposition of John DeRay, dated September 4, 2003 [hereinafter "DeRay"], at 97.

2.      At all times relevant hereto, the Union and Otis were parties to a collective bargaining agreement [hereinafter the "CBA"], which CBA included certain agreed-upon provisions with respect to the filing and processing of grievances. DeRay Ex. 4 at Article XV, Arbitration, pp.59-65.

3.      Prior to February 6, 2002, the plaintiff was an employee of Otis Elevator Company [hereinafter "Otis"]. DeRay at 9-10.

4.      Prior to February 6, 2002, the plaintiff was employed at "on construction," required that the plaintiff wear a safety harness at all times. DeRay Ex. 6.

5.      During the period of the plaintiff's employment at Otis, Otis maintained a safety policy which provided, <u>inter alia</u>, that "[o]n construction, a safety harness or fall protection uniform and shock absorbing lanyard shall be worn at all times. . . ." DeRay at 12-13; DeRay Ex. 3 at 53-54.

6.      The Otis safety policy with respect to safety harnesses and fall protection uniforms and shock absorbing lanyards contains certain exceptions, none of which applied to the site at which the plaintiff was employed or the circumstances of his employment. DeRay Ex. 6.

7.      The plaintiff was aware of this policy. DeRay at 13.

8.      In September, 2001, the plaintiff's supervisor, Russ Larson, instructed the plaintiff to wear a safety harness while operating the elevator on the Mohegan Sun job site where he was working. DeRay at 20.

9.      Mr. Larson required all Otis employees, including all mechanics or helpers, who operated an elevator at the Mohegan Sun job site to wear safety harnesses. DeRay at 38.

10.     The plaintiff disagreed with this policy and refused to comply with it. DeRay at 33, 43; DeRay Ex. 5 at 2.

11.     On or about November 27, 2001, the plaintiff and Mr. Larson were involved in an incident arising out of the plaintiff's refusal to wear a safety harness. DeRay Ex. 5.

12.     The plaintiff indicated that Mr. Larson told him at that time that if the plaintiff took off the safety harness, Mr. Larson would fire him. DeRay Ex. 5.

13.     The plaintiff did not discuss his grievance with respect to the policy with Mr. Accarpio within ten (10) working days after the cause of the grievance became known to the plaintiff. DeRay Ex. 4 at 60.

2

14.    The plaintiff met with Mr. Larson on December 4 or December 5, 2001. DeRay at 57.

15.    Neither Mr. Accarpio nor Mr. Koerbel was present at the plaintiff's meeting with Mr. Larson, notwithstanding the provisions of Article XV ¶ 2 of the CBA. DeRay at 57; DeRay Ex. 4 at 60.

16.    The plaintiff had not asked that either Mr. Accarpio or Mr. Koerbel, or any other representative of the Union or the International, attend the meeting between the plaintiff and Mr. Larson. DeRay at 58.

17.    On December 10, 2001, the plaintiff left a written document on Mr. Accarpio's desk. DeRay at 63; DeRay Ex. 5.

18.    If a Union member wishes to file a grievance, the procedure is that the member contacts Mr. Accarpio, who files the grievance electronically on the member's behalf. Affidavit of Dominic Accarpio [hereinafter "Accarpio"] at ¶ 8.

19.    The December 10, 2001 document did not comply with the CBA at Article XV ¶ 3. DeRay Ex. 4 at 60-61.

20.    Prior to drafting the December 10, 2001 document, the plaintiff had read Article XV of the CBA. DeRay at 57.

21.    The December 10, 2001 document did not identify the "alledged policy" which was at issue. DeRay Ex. 5.

22.    By memorandum dated January 28, 2002, Mr. Larson issued a written memorandum to all construction personnel, with a copy to Mr. Accarpio, reiterating the rule and its exceptions with respect safety harnesses. DeRay Ex. 6.

23.    The plaintiff received a copy of the January 28, 2002, memorandum.  DeRay at 69.

24.    Thereafter, on February 5, 2002, Mr. Accarpio visited the job site and spoke with all of the Union members who were running elevators at the site, including the plaintiff.  He told them that they were required to comply with Otis' safety policy regarding the use of safety harnesses.  Accarpio at ¶ 17.

25.    Mr. Accarpio specifically told the plaintiff that failure to wear the safety harness could result in the termination of the plaintiff's employment.  DeRay at 70-71.

26.    Notwithstanding Mr. Accarpio's warning, the plaintiff continued to refuse to wear a safety harness.  DeRay at 71.

27.    By letter dated February 6, 2002, Otis terminated the plaintiff's employment "[b]ecause [he] continue[d] to violate the Otis safety policy regarding harnesses on construction sites. . . ."  DeRay at 72; DeRay Ex. 7.

28.    The plaintiff's employment with Otis was terminated for cause, to wit, refusal to wear a safety harness despite clear and unequivocal statements, both from Otis and from Mr. Accarpio, that the plaintiff was required to wear such harness.  DeRay Ex. 7; Accarpio at ¶¶ 17-18.

29.    The plaintiff did not ask for an oral step meeting with respect to the termination of his employment.  DeRay at 80; Accarpio at ¶ 11.

30.    On February 12, 2002, the plaintiff asked a Union secretary to type a document for him addressed to the "National Arbitration Committee."  DeRay at 73-74; DeRay Ex. 8.

31.    The February 12, 2002 document purportedly relied upon so much of Article XXII ¶ 4(e) of the CBA as provides that "[s]uch a termination [for unsatisfactory performance by

4

an employee who is to be replaced] may be submitted as a grievance to the National Arbitration Committee as provided under Article XV as a final source of appeal." DeRay Ex. 8.

32.    The provision quoted by the plaintiff does not authorize a grievant to disregard the provisions of Article XV providing for the oral step, written step one, or written step two. DeRay Ex. 4 at 60-61.

33.    The plaintiff did not file a written grievance with respect to the termination of his employment. Accarpio at ¶ 12.

34.    In his document dated February 22, 2002, the plaintiff indicated his intent to sue Messrs. Accarpio and Koerbel, as well as Otis, the Union, and the International. DeRay at 82-83.

35.    Such document reflected the plaintiff's intent to sue these defendants on the same grounds as those asserted in his complaint in this matter. DeRay at 84.

36.    On March 14, 2002, a meeting was held with the plaintiff, Mr. Accarpio, and Mr. Koerbel, at which time these parties discussed the plaintiff's claim. Accarpio at ¶¶ 15-18.

37.    Also on March 14, 2002, a meeting was held with Messrs. Accarpio and Koerbel and Ernest Lowe, the labor relations officer of Otis. Accarpio at ¶¶ 15-18.

38.    During the meeting with Messrs. Accarpio, Koerbel, and Lowe, it was established that (a) the plaintiff had been aware of the Otis safety policy regarding safety harnesses, (b) the plaintiff had been warned, both by Otis and by Mr. Accarpio, that failure to comply with the policy would result in the termination of his employment, (c) the plaintiff had received a copy of the January 28, 2002 memorandum, and (d) the plaintiff nonetheless willfully refused to wear a safety harness.  On the basis of these conclusions, the parties agreed that the plaintiff's termination had been just. Accarpio at ¶ 18.

39.    Subsequent to the March 14, 2002, meeting, the plaintiff was advised orally that it was the opinion of the Union and/or the International that the termination of his employment had been just.  Accarpio at ¶ 19.

40.    On May 23, 2002, a meeting was held involving the plaintiff, Union member Judd White, Mr. Accarpio, and Mr. Koerbel, at which time the plaintiff reiterated his refusal to wear a safety harness.  DeRay at 83-84.

41.    During the May 23, 2002, meeting, Mr. Koerbel informed the plaintiff that his grievance had no merit, because the plaintiff had been instructed to comply with Otis' safety policy regarding safety harnesses and the plaintiff had refused to do so.  Affidavit of Ronald Koerbel at ¶ 27.

42.    The instant case was filed on December 4, 2002.  DeRay at 9.

DEFENDANT INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS, LOCAL 91

By
J. William Gagne, Jr., Esq.
Gagne & Associates, P.C.
1260 Silas Deane Highway
Wethersfield, CT  06109
(860) 522-5049
Federal Bar No. ct02126

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed via first-class mail, postage prepaid, on November 26, 2003, to all counsel and pro se parties of record, as set forth below:

Mr. John B. DeRay
1078 New Britain Avenue, Apt. 104
West Hartford, CT  06110

Robert Matisoff, Esq.
Keith R. Bolek, Esq.
O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, N.W.
Washington, DC  20016

Edward J. Dempsey, Esq.
United Technologies Corp.
United Technologies Building
Hartford, CT  06101

J. William Gagne, Jr., Esq.