FILED

2003 DEC 11 P 12: 28

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| John DeRay<br>Plaintiff | CIVIL ACTION NO<br>3:02CV-2139 (JCH) |
| VS. | |
| Russ Larson, Jeff Hasting,<br>Ernest Lowe, Otis Elevator<br>Ronald Koerbel, Dominic<br>Accarpio and International<br>Union of Elevator Construction (IUEC)<br>Defendants | December 2<br>~~November~~___, 2003 |

OPPOSING ARGUMENT TO DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF OTIS ELEVATOR COMPANY MOTION FOR SUMMARY JUDGEMENT

In his introduction the defendant make reference to "a clear rule regarding the wearing of fall protection equipment while working on construction for Otis Elevator Company."

The Rule the defendant is referring to states:

On construction, a safety harness or fall protection uniform and shock absorbing lanyard shall be worn at all times. Exhibit  4

The plaintiff has over 25 years of experience in the elevator trade.

Plaintiff agrees with Article VII CBA, which defines construction work. Paragraph 1 reads construction work is hereby defined as erecting and assembly of apparatus as enumerated in Article IV and Article IV (A) of this agreement.

Exhibit  6

Plaintiff finds this to be a clear rule on construction. While constructing an unmanned lift with co worker Judd White at the Mohegan Sun site plaintiff wore both harness and

/

lanyard due to hazardous conditions encountered on construction. Deposition DeRay at page _13 + 14_

On construction the plaintiff wore fall protection at all times. The rule as written and understood by the plaintiff was never violated.

Russ Larson changed the clear written rule adding the word **site** to on construction. Exhibit _4_

#1 A memorandum dated January 28, 2003.

From: Russ Larson

To: All construction personnel

Exhibit _4_ The memorandum has a bottom line that states we will be specifically covering this topic at safety meetings for construction personnel during the month of February. Please contact me if you have any question regarding this policy.

These meetings took place weekly but elevator operators were required to attend, because they were not considered construction personnel.

During the construction of the Gillespie Hoist. Plaintiff was required to attend these meetings. Plaintiff was terminated prior to meetings that were to specifically cover the very topic plaintiff was being terminated for. Union publications make it clear there are unwritten exceptions when fall protection shall not be worn. Exhibit _1_

The Otis employee safety handbook has a safety philosophy, which in part states, "safety is part of the planning process, and if good judgment is applied accidents will be prevented." Exhibit _3_

#2 Most if not all experienced construction personal are appreciative of fall protection equipment, however there are times when such equipment can be detrimental and

2

therefore should not be worn.

Exhibit __l__

Operating an elevator is in that category. There is no fall protection hook up device in an elevator nor were operators required to comply with the lanyard portion of the rule. An operator wearing a harness with a 2-inch ring on his back is an invitation to a practical joker that could easily hook a line to the ring and transport the line to an outside landing. A similar situation has already taken place when a dog's leach was half in and half out of an elevator. The dog was killed. See Otis safety manual at 4.6 horseplay.

Exhibit __10__ .

Plaintiff was operating for all trades. Plaintiff has witnessed effects of practical jokes. There are practical jokers on constructions. The ring on plaintiff back is an unnecessary invitation. A practical joker or an irate construction worker could easily subject the operator to unnecessary risk or injury.

The plaintiff was asked many times why are you wearing this fall protection to operate an elevator. Common since dictates the safety device was inappropriately being forced on the plaintiff. It served no useful purpose; it also could be misused by others who could easily hook harmful objects to the ring on the plaintiff back.

No practical joker has ever carried out the above and there is a reason for that, elevator operators are not normally required to wear safety harness. Never in the past has it been referred to as a safety violation.

Affidavits DeRay, DeRay, White and Wing

See 15.0 of the Otis safety manual fall protection categorize the safety harness with shock absorbing lanyard as an alternated means of protection.

3

The section also states "elimination of fall hazards should always be our first consideration and our preferred option.

Exhibit  3  at  P 51

All elevators at the Mohegan Sun and at the Bushnell Theater were safety tested by construction workers and inspected prior to the plaintiff's assignment of operation. The above section in accordance with 15.5 fall hazards had been eliminated.

Once this criteria has been accomplished there is no personal safety equipment that can assist the operator or passengers who ride these elevators. They are not temp elevators as defined.

The safety devices are incorporated into the elevator mechanism and tested prior to being used by personal.

It was admitted at an unemployment hearing by defendant Russ Larson that a safety harness would have been of no benefit to the operating engineer who fell to his death at the Mohegan Sun construction site.

It as also admitted by Larson that he was relining on his own interpretation of a written safety policy. Exhibit  9  .Tape recording of unemployment hearing under oath Exhibit.  See Note

Russ Larson is relatively new in the field of construction.

Defendant claims 1 Otis elevator did not breach the CBA should be denied.

Article XV Arbitration exhibit  6  states paragraph 1 any differences or dispute regarding the application and construction of this agreement, shall be referred to as a

grievance.

The defendants introduction refers to plaintiffs December 10, 2001 grievance as a perceived insult exhibit 2 and 3 of the complaint an attached as exhibit # __2__

This grievance was typed by the union secretary in the union office on December 10, 2001, Deposition DeRay page __28__ ..

A copy was left on the business agent's desk and brought to the Otis office on Pitkin Street in East Hartford and left on the desk of supervisor Jeff Hastings.

If this grievance had been addressed in good faith and according to the CBA this court action would not have been necessary nor would have the plaintiff been fired, but the grievance was not addressed and theirfor plaintiff had no choice but to proceed on his own. Paragraph 3 the written step exhibit __2__ however as written it could have also been used to initiate the oral step described in Paragraph 2 of Article XV.

Neither company representative nor business agent got involved.

The filing of a grievance is not in subordination. " Take off your harness and I'll fire you is not a joke" its provoking insubordination.

It was more than a perceived insult; it was a capricious display of power on a single employee who was complying with an interpretation of a safety rule that had no true merit towards safety. In fact it could be detrimental to the operator.

#4 Plaintiff grievance also claimed it was a violation of O tolerance and because the normal grievance procedure was not being adhered to, plaintiff filed the grievance in writing on December 10, 2001.

Defendants accusation #2 the union did not fail in its duty to represent DeRay is untrue. The only recorded representation by union and employer is a meeting dated March 14,

2002 plaintiff was not given due notice. Those March 14, 2002 notes show the union acted deceitfully by bringing to a close the plaintiffs grievance. There is no question dishonesty was actuated when it was claimed by business agent that he had no knowledge of the letter and was never asked to file a grievance. This meeting was no less than a sham and the union acted in bad faith. They fraudulently attempted to deny the plaintiff his right according to the CBA. The actions constitute an arbitrary disregard of a meritorious grievance. Cruz v Local No 3  34 f. 3 d 1148, 1153 (2d cir. 1994

2. DeRay failed to exhaust the remedies available to him under CBA is untrue.

DeRay was denied the opportunity. DeRay went to both union and employer with grievance. On February 6, 2003 plaintiff was terminated.

December 10, 2001 grievance was never properly addressed. Plaintiff attempted to get his business agent to represent him, but he failed or refused.

Fair representation 15-65

Union's breach of duty of fair representation.

The plaintiff received no representation from his business agent

There is proof that the business agent lied in his responses to interrogatories.

Defendant Dominic Accarpio's responses to plaintiff first set of interrogatories.

Exhibit __7__

Affidavits DeRay DeRay White and Wing can prove those lies.

Plaintiff had a second grievance typed up at the union office on February 12, 2002. Due to another failure to respond to the plaintiff termination.

Plaintiff went to the E Board on February 28, 2002 with his written grievances and a

letter dated February 22, 2002 a notice of intention to file a lawsuit.

E Board minutes dated February 28, 2002 exhibit __11__

Hand written notes written by Koerbel of the International Union of Elevator Construction IUEC dated March 14, 2002 were obtained by plaintiff through discovery These notes reveal a bad faith claim. Exhibit __12__

The letter states Ernest produced a letter from Local 91 member John DeRay stating he was fired improperly by Otis for not wearing a safety harness.

Dominic Accarpio stated that he had no knowledge of the letter and was never asked to file a grievance by John DeRay.

March 14, 2002 follows documentation of an E Board meeting dated February 28, 2002. Dominic Accarpio was present.

Exhibit __11__

Fair representation 15-85 sec 3 in part states the employees must have an opportunity to present their position at a hearing an must be given due notice of such a hearing.

Another hand written letter by Koerbel dated May 22, 2002. Addresses a meeting with John DeRay and Judd White and Dominic Accarpio.

The letter in part states 1 (Koerbal) suggested he contact Otis Human Resources.

Exhibit __12__

A letter dated May 30, was prepared by John DeRay and typed by the union secretary.

Exhibit __13__

3. DeRay waited to long to file the suit is untrue.

Ernest Lowe from Otis labor relation answered the letter on June 4, 2002.

Exhibit __14__

DeRay must exhaust available grievance procedures before bringing a section 301 claim. Those procedures were active until June 4, 2002.

The federal lawsuit was filed December 4, 2002 6 months from the day it becam apparent no grievance procedure in this case would ever take place.

[4][5] Wilhelm v Sunrise Northeast 923 the 6 months period begins to run when the plaintiff discovers or in the exercise of reasonable diligence should have discovered, the acts constituting the breach of duty.

Page 5 Arguments.

A judge must ask himself is their evidence on which the jury could reasonably find for the plaintiff.

Matsushita 475 US at 586 "that burden of evidence may be satisfied by "pointing out " the absence of evidence"

Good start what happened to the plaintiff's grievances and why were they never addressed? Why was the grievant never given due notice of the only meeting ever held by Otis Elevator and the Union?

Why is the alleged harness rule absent on other construction sites where operators are working?

CBA requirement XXII paragraph 4 section e It is understood and agreed that prior to terminating an employee for unsatisfactory performance who is to be replaced under this paragraph or any other employee, the company will give written warning to the employee with a copy to the business representative in order that the employee be given an opportunity to improve his work performance. Such a termination may be submitted as a grievance to the National Arbitration committee as provided under Article XV as a final

source of appeal. Where is that written warning?

## Genuine Issue of Material Facts

1. Plaintiff was hired to operate an elevator at the Bushnell Theater construction site No harness was issued or required to be worn.

2. Plaintiff was employed by Otis to operate an elevator at Foxwood Casino, no harness was issued or required to be worn to operate elevators.

3. Plaintiff was laid off for lack of work at Foxwood Casino when the second shift elevator operation was no longer needed.

4. Plaintiff was transferred from Bushnell to Mohegan Sun Casino and completed an Otis course prior to installing a Gillespie unmanned lift.

5. Plaintiff was assigned to observe the repair and the disassembly of an outside construction hoist at Mohegan Sun that malfunctioned causing Jack Horn an operating engineer to fall to his death.

6. Plaintiff wrote an unofficial report concerning the malfunction and sent it to OSHA and his business agent.

7. Plaintiff was reprimanded by his supervisor due to that report.

8. Plaintiff filed a grievance regarding an alleged safety policy and supervisory violation of O tolerance on December 10, 2001.

9. The union and the employer failed or refused to process the grievance.

10. The plaintiff's employment was terminated February 6, 2002 for a safety violation, that safety violation was the very same safety policy the December 10, 2001 grievance was designed to address.

9

11. Plaintiff wrote a second grievance February 12, 2002 and left copies with union and the employer.

12. The union and the employer again failed or refused to process the grievance.

Additional Geniune Issue of Fact are on record in the Plaintiff original complaint.
All these are genuine issues of Material fact and can be proven through for mentioned affidavits interrogatories and documents.

Sec 9-6 (c) unfair labor practices.

The law establishes unfair labor practices for employers, employees, and labor organizations.

It is unfair labor practice for an employer:

8. To refuse to discuss grievances with representative of employees

9. To discharge or otherwise discriminate against an employee because he has signed or file an affidavit, petition or complaint or given any information under this law:

This law would include DeRays unofficial report.. Exhibit___15___and Affidavit 5___ DeRay and White.

In DeRay deposition attorneys refer to plaintiff position as an operator of temporary elevators numerous times.

Deposition DeRay at pages 22, 33, 41, 42, 44, 45,47,48,49,50, 52,98,99 and 106.

They were not temporary elevators and they were being operated by operating engineers and elevator personal.

Repetitious mis interpretation does not change a written meaning.

CBA Article IV Work Jurisdiction

Par. 1 It is agreed by the parties to this agreement that all work specified in article IV shall be performed exclusively by Elevator Constructors Mechanics and Elevator Constructor Helpers in the employment of the company.

Operating engineers are not elevator constructor mechanic or helpers.

Operating engineers cannot operate temporary elevator equipment but they did operate these elevators because those elevators were permanent and operational.

Affidavits DeRay and Wing

Par 3 Article IV Temporary Elevators

A temporary elevator is defined as a non permanent elevator installed prior to or during construction work inside or outside buildings the assembly, disassembly and moving of temporary elevators from job to job or area to area may be accomplished in the most economical fashion provided, however, whatever work is required to be performed at the job site in the connection therewith shall be performed exclusively by Elevator Constructor Mechanics and Helpers.

COMMENTS ON DEFENDANTS MEMORANDUM OF LAW

99 la (BNA)20

no. 92/09498

Just cause existed

Statement of facts

Boilers, which have sloped tops while working on top of these boilers, company employees were required to wear safety belts.

"Comment"

Safety belts like the harness is designed for fall protection the employee wasn't required to wear the belt until his job presented a fall hazard atop of the boiler. The employee was not required to wear or obtain a safety belt for the first 6 hours during clean up and odd jobs.

"Summary"

Contract unambiguously states company has the right to make necessary and reasonable safety rules. The plaintiff DeRay agrees to necessary and reasonable safety rules. Plaintiff DeRay was being subjected to unreasonable rules that could not protect him, and could be detrimental.

Crider, Supra at 1243

Defendant claims DeRay vs. Larson is not unlike the Crider case, but it is.

DeRay was in harness compliance when Larson told DeRay take it off and I'll fire you.

In order to make a Crider comparison work, Crider would have reported with the test results and conforming to the requirement. Then the supervisor tells DeRay to take it off, that would be like telling Crider to tear up your test results so I can fire you.

When a supervisor provokes insubordination it should not be considered insubordination nor should an employee be forced to conform to a misinterpreted version of a safety rule, which could be of no help, in the event the elevator malfunctioned. Harness and lanyard could only contribute to a dangerous entanglement. Such an entanglement could harm the operator and cause damage to the elevator.

Defendant's motion for summary judgment should <u>not</u> be granted.

Respectfully
*[signature: John DeRay]*
The Plantiff
1078 New Britain Ave
West Hartford CT 06110
*[signature: John DeRay]*

Certificate Of Service

Plaintiff John DeRay certifies that a copy of this motion was mailed by first class mail or hand delivered on this _____ day of _____ 2003 to the following:

J William Gagne Jr.
Law Office of J William
Gagne Jr & Assoc, P.C.
1260 Silas Deane Highway
Wethersfield Ct 06109

Edward J Dempsey, Esquire
United Technologies Corporation
United Technologies Bldg
Hartford, CT 06101

Keith R Bolek
O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, NW
Washington, DC 20016

By the plaintiff John DeRay