UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN B. DeRAY, | : | CASE NO. |
| Plaintiff | : | 3:02-CV-2139 (JCH) |
| V. | : | |
| RUSS LARSON, JEFF HASTINGS, ERNEST LOWE, OTIS ELEVATOR, RONALD KOERBEL, DOMINIC ACCARPIO and INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS (IUEC) | : | |
| Defendants | : | AUGUST 7, 2003 |

### DEFENDANT, DOMINIC ACCARPIO'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION DATED JULY 10, 2003

Defendant, DOMINICK ACCARPIO, hereby files his responses to Plaintiff, John DeRay's, First Set of Interrogatories and Requests for Production dated July 10, 2003.

### INTERROGATORIES

1. Did you ever make the statement to me at an E Board Meeting, to the effect that the requirement of an operator to where a harness is unnecessary and ridiculous. I will back you on your refusal to where the harness because on this issue you are right. Do you recall?

Response:   Yes.

2. Was the plaintiff hired by Otis to operate an elevator? At the Bushnell theater, through Local 91?

Response:   Yes.

3. Was the plaintiff ever required to wear a harness on that job?

Response:   Yes.



PLAINTIFF'S EXHIBIT
CASE NO. CV 2139
EXHIBIT NO. 7

4. Is it fair to say that the harness requirement for operators did not take issue on any other job, Otis or otherwise until Russ Larson made it an issue at the Mohegan Sun:

Response:   I do not know.

5. What, if any, form of construction work are elevator operators required to preform in their duties as operators?

Response:   None, elevator operators are not required to perform construction work.

6. On December 10th 2001, John DeRay filed a grievance against Russ Larson, What, if any, steps did you take to represent Local Union member John DeRay?

Response:   John DeRay represented himself. He did not ask for a union representative to represent him.

7. On February 6, 2002 John DeRay was terminated by Russ Larson who is a supervisor for Otis Elevator, the reason given for termination of John DeRay was an alleged violation of safety policy?

Response:   True

9. The alleged violation hinged around the necessity for an elevator operator to where a safety harness is that correct?

Response:   Yes.

10. Does OSHA rules require the wearing of a harness for specific hazardous conditions?

Response:

11. Do OSHA rules require elevator operators to ward a harness?

Response:   Yes.

2

12. Does Otis have similar fall protection requirements for construction workers?

Response:    Yes.

13. Did Perini have operating engineers operating elevators?

Response:    Yes.

14. Were those operators' required by Otis, Perini, or OSHA to be harnessed?

Response:    I do not know.

15. Is it fair to say that any requirement of a safety harness on an elevator operator will not increase his safety in the performance of his duties?

Response:    No.

16. Did Otis Elevator operators and the operating engineers operate the exact same elevators at the Mohegan Sun construction site?

Response:    Yes.

17. Have you come across any Local Unions supporting the alleged Otis policy and if so who and from where?

Response:    I do not know.

18. On February 12, 2002, Exhibit 6, John DeRay submitted another grievance to the National Arbitration Committee, what steps did you take to follow up as an business agent to ensure that the grievance portion of the Union Agreement with Otis Elevator was upheld?

Response:    I made phone calls to regional Directors to check on the status of John DeRay's case.

3

## **DEFENDANTS VERIFICATION**

I hereby certify that I have reviewed the above interrogatories and the responses and that they are true and accurate to the best of my knowledge and belief.

_____
Dominic Accarpio

Subscribe and sworn to before me in this ___7th___ day of ___August___ 2003.

_Kimberly M Nayne_, Notary Public
My Commission Expires: May 31, 2006

STATE OF CONNECTICUT
EMPLOYMENT SECURITY APPEALS DIVISION
249 Thomaston Avenue
Waterbury, CT 06702
Telephone: (203) 596-4138   Fax: (203) 596-4290

**IMPORTANTE - TENGA ESTO TRADUCIDO INMEDIATAMENTE - TIEMPO LIMITADO PARA APELAR**

**Claimant's Name, Address & S.S. No.**          Case No.: 1063EE02

John B. Deray
1078 New Britain Avenue 104
West Hartford, Connecticut 06110

S. S. #: 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

**Employer's Name, Address, & Reg. No.**

Otis Elevator Company
c/o Jon-Jay Associates, Inc.
PO Box 779
Lynnfield, MA 01940



E. R. No. : 17-504-94                          Mailing Date : August 19, 2002

## DECISION OF APPEALS REFEREE

### CASE HISTORY

On March 8, 2002, the Administrator ruled the claimant, John B Deray, disqualified from receiving unemployment compensation benefits effective February 3, 2002. The Administrator found that the employer, Otis Elevator Company, discharged the claimant for willful misconduct in the course of his employment.

The claimant filed a timely appeal from the Administrator's determination on March 18, 2002.

On April 15, 2002, the Referee reversed the Administrator's determination and awarded benefits to the claimant.

The employer filed a motion to reopen the Referee's decision on May 6, 2002.

On May 31, 2002, the Referee granted the employer's motion, conditional on the employer's showing good cause for failing to attend the Referee's hearing.

PLAINTIFF'S EXHIBIT
CV
CASE NO. 2139
EXHIBIT NO. 8

## APPEARANCES

The claimant and Jude White appeared for the hearing. Russ Larson, Ernest Lowe, Jennifer Rice and Ed McNulty, the employer's agent, appeared for the hearing.

## FINDINGS OF FACT

1. The claimant worked for Otis Elevator Company from May, 2001, until the employer discharged him on February 6, 2002. At that time, the claimant worked as a full-time elevator operator, earning $32 per hour.

2. In November, 2001, the employer assigned the claimant to work on a project at Mohegan Sun.

3. At the time the employer discharged the claimant, the claimant was not erecting or assembling apparatus.

4. The employer's safety handbook provides that all employees under the direction of Otis must wear harnesses or fall protection uniforms with certain exceptions.

5. The agreement between the employer and the claimant's union describes construction work as "erecting and assembling of apparatus..."

6. Nowhere in the elevator operated by the claimant was a hookup for a harness.

7. The claimant received verbal warnings for not wearing a harness in both November, 2001, and December, 2001.

8. The claimant began to wear a safety harness in his elevator for a period of time. However, he again discontinued doing so before the separation took place. He would have worn a harness when working outside of his elevator.

9. On January 28, 2002, Russ Larson, the project manager at the Mohegan Sun job site issued a memo to all construction personnel reminding them of the employer's safety harness policy.

10. Thereafter, Mr. Larson never saw an employee other than the claimant working without what he believed to be a harness.

11. Mr. Larson discharged the claimant for failing to wear his harness in the elevator he was operating.

12. Notice for the April 8, 2002 appeals hearing was mailed to the employer's agent at that agent's address of record on March 27, 2002. That hearing was scheduled to begin at 11:45 AM.

13. The employer's agent did not receive the hearing notice until sometime on the day of the hearing. The hearing notice was date stamped as having been received by the employer's agent on April 8, 2002.

14. Jennifer Rice, the agent handling this matter, did not see the hearing notice until sometime after noon on April 8, 2002.

15. Ms. Rice took no action regarding this matter because the hearing had already taken place and because she decided to await the decision of the Referee and request that the case be reopened if an adverse decision was rendered.

16. The employer filed a motion to reopen the Referee's decision dated April 15, 2002, on May 6, 2002.

## ISSUE

The initial issue is whether the employer had good cause for failing to attend the Referee's hearing scheduled for April 8, 2002.

## PROVISIONS OF LAW

Section 31-248(b) of the Connecticut General Statutes provides that any decision of a Referee may be reopened, set aside, vacated or modified on the timely filed motion of a party aggrieved by the decision, or on the Referee's own timely filed motion, on grounds of new evidence or, if the ends of justice so require, upon good cause shown. No such motion from any party may be accepted with regard to a decision denying a preceding motion to reopen, vacate, set aside or modify filed by the same party.

## ANALYSIS AND CONCLUSION OF LAW

Although the claimant contends that the employer's agent could have entered a false date when stamping its receipt of the hearing notice and that the individual who actually first received the hearing notice did not offer direct testimony at this hearing, the Referee does not believe that the employer falsified the date of its receipt of the hearing notice. Therefore, the employer did not have a fair opportunity to participate in the April 8, 2002 appeals hearing. Further, the employer pursued this matter within the twenty-one day period provided for that purpose.

The employer has shown good cause for failing to attend the Referee's hearing scheduled for April 8, 2002. As a result, the employer is entitled to another opportunity to be heard and a new decision on the claimant's appeal.

## ISSUE

The second issue raised by this appeal is whether the employer discharged the claimant for willful misconduct in the course of his employment.

## PROVISIONS OF LAW

Section 31-236(a)(2)(B) of the Connecticut General Statutes provides that an individual is ineligible for benefits if he was discharged or suspended for wilful misconduct in the course of his employment. The individual will remain ineligible until he has earned at least ten times his benefit rate. Section 31-236(a)(16) of the General Statutes further provides that, except in the case of a discharge resulting from an absence from work, "wilful misconduct" means: 1) deliberate misconduct in wilful disregard of the employer's interest, or 2) a single knowing violation of an employer's reasonable and uniformly enforced rule or policy, when reasonably applied, unless the violation is due to an employee's incompetence.

## ANALYSIS AND CONCLUSION OF LAW

To establish that an individual was discharged or suspended for a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, all of the following must be found: 1) the individual knew or should have known of the rule or policy because it was effectively communicated to the individual; 2) the individual's conduct violated the rule; 3) the individual was aware he was engaged in such conduct; 4) the rule is reasonable in light of the employer's lawful business interest and there is a clear relationship between the rule, the conduct regulated, and the employer's lawful business interest; 5) the employer uniformly enforced the rule in that similarly situated employees subject to the workplace rule are treated in a similar manner when they violate a rule or policy; 6) the rule is reasonably applied in that the action taken by the employer is appropriate in light of the violation of the rule and the employer's lawful business interest, and there were no compelling circumstances which would have prevented the individual from adhering to the rule; and 7) the violation of the rule was not the result of the individual's incompetence. See Conn. Agencies Regs. §31-236-26b. The employer has the burden of proving that all of the elements of the regulation pertaining to rule violations have been satisfied. Hill v. D & L Transportation, Board Case No. 1188-BR-96 (9/27/96).

Clearly, the employer had a rule requiring employees on construction to wear a safety harness. Generally, the rule is reasonable on its face. The claimant was aware of this rule. The claimant contends that he did not violate this rule because he did no construction as defined by the agreement between the union and the employer and, as a result, he was not subject to wearing that harness. The Referee finds this argument persuasive. However, even if this Referee did not find this argument

persuasive, the employer did not reasonably applied its rule because, even if the claimant wore a harness, there was no place in the elevator to which he could hook up the safety harness. Therefore, wearing the harness would have afforded the claimant no additional safety. It served no practical purpose. This condition mitigated the claimant's failure to wear the safety harness while working in his elevator. In determining whether the application of an employer's rule or policy to a claimant was reasonable, we must consider both whether there were compelling circumstances that serve to mitigate the claimant's violation and whether the punishment imposed upon the claimant was a disproportionate response to the violation committed. If the answer to either of these inquiries is affirmative, it must be concluded that the application of the rule to the claimant was not reasonable. Conn. Agencies Regs. §31-236-26b(d); <u>Dinger v. Ursery Companies, Inc.</u>, Board Case No. 963-BR-96 (8/19/96).

Under the conditions described above, the employer has failed to prove that it discharged the claimant for a single knowing violation of a reasonable and uniformly enforced rule or policy which was reasonably applied. The employer discharged the claimant for reasons other than wilful misconduct conduct in the course of his employment. As a result, the claimant is not disqualified from receiving unemployment compensation benefits pursuant to Conn. Gen. Stat. § 31-236(a)(2)(B).

**DISPOSITION AND ORDER**

The Administrator's determination is <u>reversed</u>, and the claimant's appeal is <u>sustained</u>. Benefits are awarded, effective the week ending February 16, 2002, provided the claimant is otherwise eligible.

John W. Blair, Jr., Associate Appeals Referee

JWB:jbw

**IF YOU WISH TO APPEAL THIS DECISION, YOU MUST DO SO BY SEPTEMBER 9, 2002. SEE NEXT PAGE FOR IMPORTANT INFORMATION REGARDING YOUR APPEAL RIGHTS.**

**Russ Larson**

Request for Production

1. Defendant is unable to respond to this request due to the fact that the question refers to a document that is neither attached nor referenced in any detail. To the extent Plaintiff clarifies his request, Defendant will provide an appropriate response.

Interrogatories

1. Attached as Exhibit A are the applicable provisions of the Otis Elevator Company (Otis) Safety Handbook, which is provided to every Otis employee. The document(s) speak for themselves.

2. See response to 1 above.

3. There is no "operator" job classification at Otis. The constructing or operating of an elevator constitutes elevator constructor work as covered by the collective bargaining agreement with the International Union of Elevator Constructors (IUEC). The same Otis safety policies apply whether the employee is in fact operating or constructing an elevator at any given time.

4. To the extent this request asks for an expert opinion or legal conclusion, a response is not required. Otis policy requires a safety harness and lanyard as appropriate fall protection equipment. Employees are not permitted under Otis policy to wear only one aspect of the fall protection equipment (e.g, a safety harness, but no lanyard).

5. Yes. All Otis employees are required to comply with its safety policies including the wearing of a safety harness and lanyard.

6. See response to 5 above.

7. Defendant is unable to respond to this request due to the fact that the question relates to Exhibit 3, which did not accompany Plaintiff's Interrogatories. To the extent the request relates to a conversation between Plaintiff and Defendant Larson, Defendant informed Plaintiff of Otis' safety policy and instructed Plaintiff to comply with such by wearing the proper fall protection equipment.

8. Defendant is unable to respond to this request due to the fact that the question relates to an Exhibit 1, which did not accompany Plaintiff's Interrogatories.

9. See Exhibit A. To the extent this request seeks additional information clarify the request.



10. See Exhibit A.

11. See Exhibit A.

12. To the extent Plaintiff's request relates to a specific policy on termination, Defendant's response is "False." To the extent, Plaintiff is referring to a disciplinary chart outlining the discretion afforded Otis management in imposing safety discipline please see Exhibit B attached. To the extent Defendant's request relates to any other "policy regarding termination" Otis has a collective bargaining agreement with the IUEC, a safety handbook, safety TIPS, and a multitude of employment policies and procedures that when violated by an employee may result in disciplinary action up to and including termination.

13. See response to 11 and 12 above.

14. To the extent this request requires a legal conclusion no response is required. To the extent this request relates to the disciplinary chart attached as Exhibit B, or any other policy noted in Defendant's response to 12 above, Defendant denies that it abandoned any such policies.

15. Defendant has no first hand knowledge related to this request and therefore cannot provide a response.

16. See June 4, 2002 correspondence from Ernest Lowe, Labor Relations Manager attached as Exhibit C. See also, January 28, 2002 memorandum from Russ Larson to all personnel including Plaintiff attached as Exhibit D.

Request for Production

2. List of employees attached

3. See Exhibit A. See also acknowledgment form signed by Plaintiff, as well as Computer Based Testing CDs.

**<u>Jeff Hastings</u>**

<u>Interrogatories</u>

1. To the extent this request assumes Plaintiff filed an actual formal grievance as required under the collective bargaining agreement, Defendant's response is "No." TO the extent this request relates to a letter dated December 10, 2002 that was delivered to Defendant on or about December 11, 2002, Defendant's response is "Yes."

2. As to the timing noted in this request, Defendant's response is "No." To the extent this request relates to a conversation that occurred on or about December 11, 2002 Defendant's response is "Yes."

3. No.

4. No.

5. Yes. Defendant informed Plaintiff on December 11, 2002 that Russ Larson would provide him with another copy of the applicable policy. Russ Larson in fact provided Plaintiff with such policy sometime in December, 2002, and further notified all personnel of such policy by memorandum dated January 28, 2002 and attached as Exhibit A.

6. See response to 5 above.



**THINK AND DRESS SAFETY**

RIGHT and SAFE | WRONG and DANGEROUS

**4.5** **Rings, Bracelets, Wrist Watches, Necklaces, Etc.,** must not be worn around moving machinery, electricity, or at any other operation where they may be a potential source of injury.

**4.6** **Horseplay** will not be tolerated. Practical jokes and fighting can cause accidents and serious injuries. Such actions on the job are forbidden. Do not distract or annoy other employees. Besides having a responsibility for your own safety, you have a responsibility for the safety of others.

-9-

7/00





# International Union of Elevator Constructors

LOCAL NO. 91, 914 MAIN ST., SUITE 203, EAST HARTFORD, CONN. 06108
PHONE 860-289-8689

MINUTES OF THE EXECUTIVE BOARD MEETING---2-28-02—E. Htfd.,CT.

Meeting called to order at 7:30 P.M. by Chrm. P. Ploom.

Present were:

| | | | | |
|---|---|---|---|---|
| Dom Accarpio | Dennis Baumgartel | Jim Behan | John DeRosa,Jr. | Pete Kalousdian |
| Dave Watson | Steve Bruno | Pete Ploom | Gil LaClair | Al Small   D. Lukas |

At this time Bro. Matt Grous from Thyssen Elevator was asked to appear before the E. Brd. He is a temp. mech. It seems that the boss at Thyssen is bothering the younger mechanics. There are allegations that he is offering bonuses for bringing jobs in ahead of time. Discussion presented on this matter. Also the use of Lull tractors and forklifts to unload material was discussed. Mr. Grous was thanked for his appearance and excused.

Also at this time Bro. John Deray was asked to appear before the E. Brd. to discuss the lawsuit he proposes to file against Otis Elev. and Local 91.
A briefing as to the context of the lawsuit was presented by Bus./Mgr. D. Accarpio.
A rebuttal was presented by Bro Deray.
A lengthy discussion by both sides was conducted on the issues brought up by this suit.
Bro. Deray was thanked for his appearance and excused at 8:50 P.M.
A discussion by the E. Brd and Officers present was conducted on Mr. Derays situation. This grievance is being handled immediately with International.

The E. Brd. determined that Mr. Deray did not follow protocol and proper procedure when filing a grievance against Otis and in the future any problems or grievances will be filed using all available in house sources for remediation before going to any outside source or entity.

The E. Brd. approved $37.00/man cost for the Union Picnic.

Meeting adjourned at 9:55P.M.

Respectfully submitted,

*David P. Watson*
David P. Watson,Sr.
Recording Secretary, Local 91



PLAINTIFF'S EXHIBIT
CASE NO. 2139
EXHIBIT NO. 11



# International Union of Elevator Constructors

LOCAL NO. 91, 914 MAIN ST., SUITE 203, EAST HARTFORD, CONN. 06108
PHONE 860-289-8689

## MINUTES OF THE E. BRD. MEETING – 12-19-02 –E.HTFD,CT.

Meeting called to order at 7:30P.M.

### ROLL CALL OF OFFICERS AND E. BRD. MEMBERS

Dom Accarpio-------------P
Dave Watson--------------P
Steve Bruno----------------P
Dan Johnson---------------P
Pete Kalousdian-----------P
Gil LaClair-----------------P

Dennis Baumgartel-------------------P
Dick Lukas----------------------------A
Al Small--------------------------------P
Jim Behan-----------------------------P
Jay Downey--------------------------P
John DeRosa,Jr.--------------------A

Bro. Steve Pierce didn't accept the registered letter sent by local 91. It was returned by the Post Office. The E. Brd. found Mr. Pierce guilty as charged and fined him the sum of $500.00 with nothing suspended. This fine is to be paid on or before the 2nd quarters dues are due.

The trial of Bro. John Petruzullo was held with him in absentia  The trial opened with Dom reading the charges which were also filed by Dom. He was charged with working for a non signatory company. He works for Handi-Lift. The E. Brd. found him guilty as charged and fined him the sum of $2,000.00 with nothing suspended. This fine is to be paid on or before the 2nd quarters dues are due.

Eagle Elevator---Bro. Mike Rice has been barred from going into any of the prison facilities in the State. Dom is going to look into the legality of this.

Bro. John DeRay is suing Local 91,International,and Otis Elevator for reasons still unknown at this time.

Starting the 1st of the year the E. Brd. will start updating our Constitution and By-Laws. When completed thsy will be sent to the printers for copies to be made.

Meeting adjourned at 9:15 P.M.


Respectfully submitted,

*David P. Watson*
David P. Watson,sr.
Rec./.Sec. Local 91



# International Union of Elevator Constructors

LOCAL NO. 91, 914 MAIN ST., SUITE 203, EAST HARTFORD, CONN. 06108
PHONE 860-289-8689

MINUTES OF EXECUTIVE BOARD MEETING - AUGUST 21, 2003 – E. HTFD., CT

MEETING WAS CALLED TO ORDER BY CHAIRMAN OF THE BOARD AL SMALL AT 7:30 P.M. - ROLL CALL AS FOLLOWS:

P – D. ACCARPIO
P - D. KELLY, SR
P - S. BRUNO
P - G. LACLAIR
A - D. WATSON
A - D. JOHNSON

P – JOHN CRICCO
P - P. KALOUSDIAN
P - D. BAUMGARTEL
P - A. SMALL
P - JAE DOWNEY
A – J. DEROSA, JR.

DISCUSSION CONCERNING A LETTER FROM OTIS ELEVATOR COMPANY OVER CHANGING OF PRIMARIES OF MULTIPLE MEN –

DISCUSSION CONCERNING DOMINIC SENDING AN ARTICLE INTO THE JOURNAL, ABOUT THE ARTICLE THAT TALKS ABOUT OUR R-2 LICENSE AND A POSSIBILITY OF LAW SUITS WITH ELEVATOR ACCIDENTS –

JOHN DERAY ATTENDED THE EXECUTIVE BOARD MEETING AT 7:50 P.M.: HE WANTED TO DISCUSS COURT CASE, NO DISCUSSION FOLLOWED BECAUSE LOCAL 91'S ATTORNEY TOLD DOMINIC THAT NO-ONE CAN TALK ABOUT ABOVE CASE.

DISCUSSION ABOUT LETTER SENT OUT TO MEN AND WOMEN OF LOCAL 91'S CONCERNING ESCALATOR REPAIRS: ALL REPAIRS ARE 2 (TWO) PEOPLE. MAINTENANCE CAN BE DONE BY 1 (ONE) PERSON. ANY FACOTR OF SAFETY DEEMS 2 (TWO) PEOPLE.

DISCUSSION ABOUT DOMINIC GETTING QUESTIONED BY MAINTENANCE MEN HAVING TO CALL IN WHEN DOING ANY REPAIRS. IF MAINTENANCE MEN ARE DOING REPAIRS, THEY WILL COMPLETE THE JOB – START TO FINISH.

DISCUSSION ABOUT THE WORK SITUATION:

    AT THE PRESENT TIME WE HAVE 17 MECHANICS OUT OF WORK AND
    14 APPRENTICES/HELPERS OUT OF WORK.

MEETING ADJOURNED AT 9:15 P.M.

RESPECTFULLY SUBMITTED

STEVEN A. BRUNO, PRESIDENT
LOCAL 91