March 14, 2002

Meeting with Otis, Ernest Sowa Labor Relations, Dom Accarpio & myself for IUOE.

Ernest produced a letter from Local 91 member John DeRay stateing he was fired improperly by Otis for not wearing a safety harness. Don Accarpio stated he had no knoledge of the letter and was never asked to file a grievance by John DeRay.

Don also stated that after several warnings from Otis to John he personaly when to the job site and had a meeting with all car opperators telling them they must wear the harness as required by Otis safety policy. John DeRay stated he is not going to wear it no matter what Don or Otis says.

I agreed with Otis & Don that it was a just dismissal. Charges should be filed by Local 91 on John DeRay for disobeying a directive from B.A.

Grievance #430 – Otis will sleep on this grievance and get back to me.

We want this man to be eligible for rehire!

Discussed LR in Foxwoods Casino – will have further discussions with Otis office mgrs.

PLAINTIFF'S EXHIBIT
CV
CASE NO. 2139
EXHIBIT NO. 12

May 23, 2002

Meeting with John DeLay & Jud White - Local 91 members Don Asaykevic & Kuerbel

John DeLay asked about his grievance with Otis — Don told him he never filed a grievance with the union. John said that he had sent a letter to Otis to complain about being fired and had a meeting with Otis on this matter. (Don had no knowledge of any meeting.)

I told John his grievance had no merit because he was told by Otis & BA to comply with safety policy and he would not.

John explained the clash between him & Supervisor Russ Larson and he had made his mind up that he was not going to wear harness.

I suggested he contact Otis Human Resources and see if they could help him because it seemed like there was a problem with him & Russ Larson personally.

John did admitt that he was told by Dominic & Otis to wear harness and would not comply.

TO:   MICHELLE BEAYPRE
      HUMAN RESOURCES
      1 FARMS SPRING DRIVE
      FARMINGTON, CT 06032

DATED: MAY 30TH, 2002


RE:   A GRIEVANCE DATED DECEMBER 10TH, 2001


THIS GRIEVANCE WAS NEVER ACTED UPON AND A SECOND GRIEVANCE, WHICH SLIPPED THROUGH SIMILAR CRACKS,

OTIS ELEVATOR COMPANY AND THE INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS HAVE AN AGREEMENT, A CONTRACT IF YOU WILL, TO FOLLOW A WRITTEN PROCEDURE WHICH IS FOUND IN THE OTIS AGREEMENT WITH THE INTERNATIONAL OF ELEVATOR CONSTRUCTORS.

I AM A PORTION OF THAT UNION AND THEREFORE, ENTITLED TO THE AGREEMENT AS IT IS WRITTEN. I WAS AN EMPLOYEE OF OTIS ELEVATOR COMPANY WHEN THE FIRST GRIEVANCE WAS WRITTEN.

IRONICALLY THE PERSON WHO SIGNED MY TERMINATION LETTER WAS THE SAME PERSON I HAD FILED A GRIEVANCE AGAINST.

I AM EMENCELY TROUBLED BY THAT AND I BELIEVE THE FACTS WILL UPSET MR. LARSON AND HIS POLICY, WHICH MOST NORMAL HUMANS CONSIDER RIDICUIOUS.

MY REQUEST TO YOU IS THAT YOU REVIEW THE INITIAL ENCLOSED GRIEVANCE, THE ENCLOSED NOTICE OF TERMINATION AND THE ENCLOSED 2ND GRIEVANCE. PLEASE WEIGH AGAINST ANY AND ALL CONTRARY TESTIMONY OF THE OTIS PERSONNEL THAT MAY HAVE BEEN WITNESSES OR MAY BE INVOLVED.

BOTTOM LINE: MY GRIEVANCES SHOULD HAVE BEEN HEARD AND DUE TO THE FACT THAT THEY WERE NOT:
   #1   I AM STILL AGRIEVED
   #2   OTIS MAY HAVE UNREASONABLE EMPLOYEES PERSUING AN AGENDA
        THAT MAY UPSET THE GRAIN OF A HIGHER THINKING EMPLOYEE OR
        X-EMPLOYEE.



        MY WORD IS MY BOND, JOHN DERAY
        1078 NEW BRITAIN AVENUE - APT #104
        WEST HARTFORD, CT 06110


CC Dominic Accarpio



PLAINTIFF'S EXHIBIT
CASE NO. CV 2139
EXHIBIT NO. 13

Otis Elevator Company
North American Area
One Farm Springs
Farmington, CT 06032


**Otis**
A United Technologies Company

June 4, 2002

Ernest Lowe
676 5732

Mr. John DeRay
1078 New Britain Avenue, Apt. 104
West Hartford, CT 06110

RE:    **Grievance (Otis Safety Policy)**

Dear Mr. DeRay:

In response to your May 30, 2002 letter, we have reviewed your grievance letters and have determined that your February 6, 2002 termination was justified. Your employment was terminated as a result of your noncompliance with the Otis Safety Policy.

The Otis Safety Policy, Section 15, Fall Protection, clearly states, "On construction, a safety harness or fall protection uniform and shock absorbing lanyard shall be worn at all times." The only exceptions to said policy:

1. The harness or fall protection uniform does not have to be worn if an Otis associate is attending a meeting at a site construction office and no other work activities are involved.
2. The project will no longer be considered a construction site when the contractor has obtained an occupancy permit.
3. All elevators/escalators have been placed on final acceptance.
4. A "handover" to Service has been completed and construction work is 100% completed on all elevators/escalators.

Due to the fact that none of the prior exceptions applied in your case and you admittedly did not comply with Otis Safety Policy, nor did you appropriately respond to Russ Larson's request to put your safety harness on, the decision to terminate you has been upheld.

Sincerely,

Ernest Lowe
Labor Relations


Cc:    Jeff Hastings, General Manager
       Russ Larson, Con. Superintendent

PLAINTIFF'S EXHIBIT
CV
CASE NO. 2139
EXHIBIT NO. 14

UNOFFICAL REPORT
BY
JOHN DERAY
1078 NEW BRITAIN AVENUE
WEST HARTFORD, CT 06110
860-985-8405

THE HOIST THAT FAILED AT MOHEGAN SUN WAS A CHAMPION DUAL CAR, COUNTERWEIGHTED.

THE CARS ARE RAISED AND LOWERED BY A MOTOR MOUNTED ON TOP OF THE CAR. THE MOTOR DRIVES A GEAR THAT MESHES A RACK GEAR MOUNTED VERTICALLY TO THE SUPPORT TOWER. THIS RACK GEAR EXTENDS FROM BOTTOM TO TOP.

THE MOTOR HAS A BRAKING SYSTEM WHICH IS LIFTED BY A SOLINOID ELECTRICLY WHEN POWER IS APPLIED TO THE MOTOR.

THE BRAKE IS VERY SIMILAR TO A CLUTCH AND PRESSURE PLATE, EXCEPT RATHER THAN BEING USED TO START MOTION ITS FUNCTION IS TO STOP THE ROTATION OF THE DRIVE GEAR, AND HOLD MOVEMENT OF THE CAR AT THE POINT OF PARK.

THE TOP AND BOTTOM LANDINGS ARE EQUIPPED WITH A CAM WHICH ACTIVATES THE ASCENDING OR DECENDING CAR TO STOP. THIS CAM CAN BE, BUT SHOULD NOT BE MOVED TO COMPENSATE FOR BRAKE SLIPPAGE EXCEPT FOR INITIAL PLACEMENT BY TRAINED AND QUALIFIED PERSONNEL BECAUSE THE BRAKE IS SELF ADJUSTING AND IF THE CAR SLIPS TO THE BUFFER OR OVER TRAVELS THE TOP FLOOR IT IS AN INDICATION THAT THE BRAKE IS WORN AND SHOULD BE CHECKED BY A QUALIFIED TECHNICIAN.

ANY MOVING OF THESE CAMS CAUSES A DANGEROUS CONDITION. THE CAR THAT CONTRIBUTED TO THE DEATH OF JACK HORN HAD BEEN MOVED UP 4-1/2" TO COMPENSATE FOR BRAKE SLIPPAGE BY SOMEONE.

WE ARE ABLE TO DETERMINE THIS BECAUSE THAT CAM HAD TO BE LOWERED 4-1/2" TO MAKE THE CAR LEVEL WITH THE FLOOR AFTER THE BRAKE WAS REBUILT.

THIS MEANS EVERYTIME THE CAR STOPPED THE BRAKE WAS SLIPPING UNTIL INEVITABLY THE BRAKE NO LONGER HAD ANY FIBER LEFT. THE CAR CAN NO LONGER HOLD ITSELF PARKED BECAUSE THE COUNTER WEIGHT IS 40% HEAVIER THAN THE CAR WHEN ITS EMPTY.

DISASSEMBLY OF THE BRAKE REVEALED A STEEL PRESSURE PLATE BROKEN INTO 3 PIECES AND A CLUTCH PLATE DISINTEGRATED, A NICE PERSON IS DEAD.

NOW IT SHOULD BE DETERMINED WHO MOVED THE CAM AND WAS HE QUALIFIED?

WAS THE CAR UNSAFE TO CONTINUE OPERATION?

PAGE 1 OF 2

PLAINTIFF'S EXHIBIT
CV
CASE NO. 2139
EXHIBIT NO. 15

WAS IT REPORTED BY THE OPERATOR AS UNSAFE AND TO WHOM?

WHAT WAS THE RESPONSE, IS THERE ANY EVIDENCE OF CRIMINAL WRONG DOING?

WHAT MAINTENANCE WAS PERFORMED AFTER THE DEATH AND BY WHOM?

WHY DIDN'T THE STATE HAVE QUALIFIED ELEVATOR INSPECTORS WHO COULD HAVE BEEN ON SITE TO DETERMINE THE BOTTOM LINE? RATHER THAN CRIMINAL DETECTIVES WHO ARE MOST LIKELY UNFAMILIAR WITH MECHANICAL DEVICES.

DID THE TRIBE, IN ANY WAY PROHIBIT THE STATE ACCESS TO THE CONSTRUCTION SITE?

THE CHAMPION HOIST IS ALSO EQUIPPED WITH AN OVERSPEED GOVERNOR WHICH TRIPS IF THE SPEED OF THE CAR IS FASTER THAN ITS RATED SPEED BY APPROXIMATELY 10%.

IN HIND SITE IT WILL PROBABLY BE IMPOSSIBLE TO DETERMINE THE SPEED OF THE CAR IN THE UP DIRECTION, BUT IT SHOULD BE NOTED THAT THIS SAFETY DEVICE DID ACTUATE ITSELF AT THE TOP FLOOR. IN HIND SITE, HAD THE OPERATOR AND PASSENGER'S RODE OUT THE ORDEAL IN THE CAR THERE WOULD HAVE BEEN NO SERIOUS INJURIES.

JACK DID NOT HAVE BENEFIT OF HIND SITE. JACK ATTEMPTED TO GET OFF A CAR THAT TOOK OFF FROM THE PARKED POSITION AND WAS TRIPED BY A BRAKELESS VEHICLE. AN ACCIDENT WAITING TO HAPPEN, AN EYE WITNESS WHO RODE IN THE CAR WITH JACK SAID FROM FLOOR 15, WHERE THE SHEET ROCK WAS UNLOADED. JACK THEN WENT DOWN BUT THE CAR REVERSED ITSELF IN 5 TO 15" FOLLOWING A PUFF OF SMOKE OR SOMETHING THEN THE CAR WENT UP AND STOPPED AT THE 25TH FLOOR. THE CAR WENT 10 FLOORS WITHOUT STOPPING SO WHEN IT STOPPED AT FLOOR 25 IT WOULD BE THE LOGICAL DECISION TO GET OUT, TO EXIT, BUT AS JACK WENT TO EXIT, THE CAR MOVED CAUSING HIM TO TRIP. THE LABORER, WHO WAS IN THE CAR WITH JACK TRYING TO HELP HIM HAD TO LET HIM GO. JACK WHO WAS NOW HALF IN AND HALF OUT AND WOULD HAVE BEEN CUT IN HALF IF THE LABOROR FAILED TO LET HIM GO. A HORRIBLE DECISION TO HAVE TO MAKE. DECISION MAY NOT BE THE RIGHT CHOICE OF WORDING IN SUCH A CASE.

NUFF SAID, RIGHT JACK. OR WOULD ACCOUNTABILITY, HELP US ALL REST IN PEACE.

DATED: OCTOBER 1, 2001

Certificate Of Service

Plaintiff John DeRay certifies that a copy of ~~this motion~~ Exhibits was mailed by first class mail or hand delivered on this 2nd day of December 2003 to the following:

J William Gagne Jr.
Law Office of J William
Gagne Jr & Assoc, P.C.
1260 Silas Deane Highway
Wethersfield Ct 06109

Edward J Dempsey, Esquire
United Technologies Corporation
United Technologies Bldg
Hartford, CT 06101

Keith R Bolek
O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, NW
Washington, DC 20016

_/s/ John DeRay_
By the plaintiff John DeRay