UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

2003 DEC 29 P 3: 25

JOHN B. DeRAY,

    Plaintiff,

v.                                                              Case No. 3:02-CV-2139 (JCH)

RUSS LARSON, et al.,

    Defendants.                                    Date December 26 2003

**Plaintiff's Counter Affidavit to Koerbal and the IUEC Affidavit**

Plaintiffs claim is not time barred, as it was filled six months to the day of a letter dated June 4th, 2002 Exhibit 14.

That letter was a response to a May 30th, 2002 letter to Otis Labor Relations from the plaintiffs Exhibit 13. That letter was written following suggestion from Ron Koerbal on May 23rd, 2002 Exhibit 12. Prior to that it was the Union and the employer's duty under national Labor Relations Act and LMRA to exhaust the CBA on behalf of the Plaintiff. During that period the plaintiff contacted local union representative, International representative and the E board.

Koerbal in his affidavit 1 through 7 is O.K. However in paragraph 8, Koerbal begins to put a spin on how to broadly define construction work, it is false and misleading and he was aware or should have been aware that all work specified in article IV does not

1

include operating an elevator and as he states, paragraph I provides that " it is agreed by the parties to this agreement that all work specified in Article IV shall be performed by Elevator Mechanics and Elevator Constructor Helpers in the employment of the company". A genuine fact is that operating engineers who are not in the employment of the company operated elevators at Mohegan Sun Casino. It was a composite crew operation, 50 percent Engineers and 50 percent Elevator Personal.

In paragraph 9 Koerbal falsely defines " **Temporary cars** may be the cars used to erect rails and brackets of an elevator, but their may be other types of **Temporary cars** Indeed, at a construction site, the actual elevators themselves may be used Temporarily to transport construction workers and material. The operation of actual elevators temporarily during construction constitutes **the operating of Temporary cars** under article IV paragraph 2 r of the Otis Agreement." This statement is untrue and I believe it is being made in bad faith to mislead the court. Otis Agreement in Article IV paragraph 3 (1) defines Temporary Elevators (a) "Nothing contained in Article IV shall preclude the Company from reassembling and prefabricating the following: (1) Temporary elevators A temporary elevator is defined as a non-permanent elevator installed prior to or during construction work inside or outside buildings. The assembly, disassembly and moving of temporary elevators from job to job or area to area may be accomplished in the most economical fashion provided, however, whatever work required to be performed at the jobsite in connection there with shall be performed exclusively by Elevator Constructor Mechanics and Helpers."

In paragraph 10 Koerbal writes "when read together Article V II, Paragraph 1 and Article IV." The previous definition Temporary elevator is part of the article IV therefore indeed Koerbal is paraphrasing and in doing so misleading the court with false statements in Lieu of the agreement. Paragraph II is o.k. Paragraph 12 Koerbal states in part "individuals who operate elevators on a construction site, which are temporarily used to transport," (That is the basic purpose of an Elevator) are mechanics, apprentices or helpers." Paragraph 13 is equally ambiguous but this paragraph Koerbal adds another work classification (Contract service work). Both operating Engineers and Elevator Personnel at Mohegan Sun were not performing any construction work they were providing a service. Service work does not require the wearing of a Harness. Paragraph 14 Admitted, paragraph 15 Admitted and the plaintiff followed the first sentence in the following manor. Plaintiff was wearing fall protection uniform giving Union representatives time to set straight the dispute. In effect this was a grievance. Affidavits confirm this, and so does Exhibit 7 responses to Interrogatories Accarpio. The grievance dated December 10, 2001 Exhibit 2. Plaintiff attempted to discuss the grievance with supervisor on December 4th or 5th. The Harness issue was being worked on by the Union Representative prior to the November 27th incident therefore the Union Representative was aware and therefore it was appropriate for the Plaintiff to discuss the issue or grievance with the supervisor on a one-on-one basis.

Second sentence paragraph 2 "the company shall designate to each local union the company's representatives for the purpose of responding to grievances at this step." This burden is on the company according to the agreement. They failed or refused and at this step the plaintiff is awaiting the company's representative. It stands to reason the company's representative is not going to be the supervisor who is involved in, and the cause of the dispute, but even if he was, the grievant at this step has only the obligation of making this grievance or dispute known and it was known but nothing was being done. What better way is there than to write it and hand deliver to the Company and the Union, this was done by the plaintiff on December 10, 2001 Exhibit __2__., Affidavits John DeRay and Jude White, the agreement continues "if an employee initiates the grievance, the local business representative shall be present during the discussion." This agreement correctly requires both Local Business Representative and the Company's Representative shall be present during the discussion. It's only fair to assume the grievant is there and the supervisor is also present. Something's don't have to be written, average intelligent persons automatically assume them. The step continues "within 3 days after the above discussion," however in this ordeal, neither Company nor Union ever consummated as required Plaintiff's dispute, complaint or grievance at an oral step meeting.

Paragraph 16 Plaintiff attempted to invoke the grievance, but there was no cooperation from either Union Representatives or company representatives. On February 6, 2002 Plaintiffs employment was terminated Exhibit __19__. Plaintiff cannot ensure the Local Business Representative that there is going to be a meeting until the meeting is

4

scheduled. Such a meeting was never scheduled regarding the December 10, 2001 Grievance, Nor was the initial dispute being addressed, in paragraph 17 Koerbal states, "It has been my experience that employees who have a grievance against their employer will go to their local unions for assistance in filing the grievance, and, in that case, the local union actually files the grievance." Plaintiff did this first by telephone then in writing, typed by the Union Secretary CC left with Local Business Representative Accarpio and Jeff Hastings Exhibit 9. Plaintiff contacted Accarpio and asked if he got the grievance. Accarpio said he got it but didn't have a chance to read it. Paragraph 18 states, "If the employee, Local Business Representative, and Company Representative is unable to resolve the grievance at the " Oral Step," the next step is " Written Step One." Article XV, paragraph 3 addresses that step and provides as follows........ Wait! there has been no conclusion to the oral step so the grievance, due to lack of cooperation as required, at the oral step could not be resolved because there was no oral step. Union Representative and Company and supervisor had to be aware there was an employee Grievance, but neither of them did noting. Plaintiff's employment was terminated. Here again Union Representative and Company Representatives had to be aware, and were made more aware because the Plaintiff had another Grievance typed up by the Union secretary on February 12th 6 days after Plaintiffs employment termination. Exhibit 17 for sure this should take the grievance back to previous paragraph 17 when it appeared that it didn't Plaintiff went to the E board Exhibit 11. Paragraph 20 it is fair to say the matter was not resolved. paragraph 21 Koerbal states " I had not received any Grievance on behalf of John DeRay that had been properly filed or processed to written step one." What Koerbal

is implying here is that Plaintiffs Grievance was not properly filed. Plaintiff made his grievance known prior to this point to Koerbal, Accarpio, Hastings and the E board. This is all documented: Exhibits 2, 9, and 11.

All this arbitration procedure is after the fact and it does not reflect anything that the plaintiff had a duty to do however it does reflect what a Union Representative had a duty to do and didn't. Accarpio's Affidavit indicates he knows the procedure yet even though multiple opportunities arose he did nothing even after the Plaintiff's employment was terminated. The written warning to the employee is absent. Accarpio failed in his commitment as union Representative and his personal commitment Interrogatory #1 Exhibit 7. Paragraph 22 Koerbal defies Exhibit 17 these minutes state "this grievance is being handled by International." In some way someone is lying or covering up bad faith representation. Exhibit 12 Also states that Dominic Accarpio said he had no knowledge of the February 12, 2002 letter and that DeRay had not asked Accarpio to file a grievance Exhibit 12. Paragraph 23 is prime opportunity, a jury may be sharp enough to see that Koerbal based his opinion on what Accarpio was saying and that Accarpio was turning the meeting into a sham filled with fraudulent and misleading statements and throwing the case. 15-65 section 11 the duty would be breached if the union were to throw the case. Paragraph 24 is o.k. Paragraph 25 untrue see Exhibit 11 minutes of E board meeting February 28, 2002. Paragraph 26 May 23rd John DeRay, Accarpio and Jude White met with Koerbal. To that extent paragraph 26 is admitted. DeRay never met nor stated to Koerbal or anyone that he had a meeting with Otis about his termination.

There was no meeting with DeRay and Otis regarding his termination except at an unemployment appeals hearing Exhibit 8 Accarpio said he would be there, but he never showed.

Paragraph 28 At the May 23rd meeting, DeRay did explain his confrontation or clash with his supervisor Russ Larson. DeRay also stated the alleged safety policy should be in writing and wanted to see it. Koerbal also suggested I write Otis Human Resources, which DeRay did May 30, 2002 this letter was also typed by the union secretary. Paragraph 29 is admitted. The written notice requirement in Article XXII paragraph 4 (e) states "It is understood and agreed that prior to terminating an employee for unsatisfactory performance who is replaced under this paragraph or any other employee, the Company will give a written warning to the employee with a copy to the Business Representative in order that the employee be given an opportunity to improve his work performance. Such a termination may be submitted as a grievance to the National Arbitration Committee as provided under Article XV as a final source of appeal." The written notice was substituted with memorandum to all Construction Personal Exhibit 4. The plaintiff was not on construction. Summary Judge meant should be denied.

This counter affidavit is the truth and sworn to before a Notary Public by the plaintiff John DeRay.

*John DeRay* [signature]

Personally appeared, John DeRay, this 26 day of December, 2003

KIMBERLY FORESHA
NOTARY PUBLIC
MY COMMISSION EXPIRES NOV. 30, 2008

*Kimberly Foresha* [signature]

Certification of Service

A True and attest copy of the forgoing __Counter Affidavits__
__To Affidavits Accarpio and Koerbal__
was mailed first class mail or hand delivered to:

William Gagne Jr.

1260 Silas Deane Highway

Wethersfield, CT 06109

Keith R. Bolek

O'Donoghue & O'Donoghue

4748 Wisconsin Ave N.W.

Washington, DC 20016

Edward Dempsey

United Technologies Corp.

United Technologies Bldg.

Hartford, CT 06101

On __December 26 2003__

By the plaintiff
John DeRay

# THE ELEVATOR CONSTRUCTOR

SEPTEMBER 2

**************AUTO** 3-DIGIT 061
65286
JOHN DERAY
THE ELMS, APT 104
1078 NEW BRITAIN AVENUE



IN UNION THERE IS STRENGTH



## I AM A BUILDING TRADESMAN

I am a building tradesman.

My hands are custodians of skills a thousand generations old, held in trust for a thousand generations to come.

My predecessors created the Hanging Gardens of Nebuchadnezzar and patiently put together the Parthenon.

My successors will construct platforms in space and way stations on the stars.

I harness the rivers, bridge the inlets, disembowel the mountains, and level the valleys to make the nation strong in war and prosperous in peace.

The mightiest skyscraper begins with a stake I drive in the ground and ends with the turn of the owner's key in a lock I install.

Between the stake and the lock I fight searing summer heat and bitter winter cold.

Danger is my constant companion and instant death lurks around every corner.

The astronaut begins his probe of the heavens from a launching pad I build.

The mightiest surgeon performs his miracles in an amphitheater I erect and provide with heat, light, water, and technical equipment.

Even at the birth of the atomic age one of my Brothers was there. And when the first test proved successful, Enrico Fermi, the master scientist, placed his arm around the shoulders of this Brother and said: "Gus, with all our education, what could we have done without your experience?"

I stand straight and walk proud, because I know my contribution to society is based on skill, not bluff; on sweat, not sweet-talk; on production, not press-agentry.

I am a building tradesman, belonging to a building trades union. Because I am, I need truckle neither to king nor tycoon.

PLAINTIFF'S EXHIBIT
CASE NO. 2139
EXHIBIT NO. 16

*Reprinted from cover of May 1969 Elevator Constructor Journal*

FEBRUARY 12, 2002

TO: NATIONAL ARBITRATION COMMITTEE

IN ACCORDANCE WITH OTIS ELEVATOR COMPANY STANDARD AGREEMENT, SPECIFICALLY ARTICLE XXII PAR 4.(e) WHICH IN PART STATES: "SUCH A TERMINATION MAY BE SUBMITTED AS A GRIEVENCE TO THE NATIONAL ARBITRATION COMMITTEE AS PROVIDED UNDER ARTICLE XV AS A FINAL SOURCE OF APPEAL." I RESPECTFULLY SUBMIT.

ENCLOSED IS THE ONLY LETTER I RECEIVED FROM OTIS ELEVATOR COMPANY AND I WOULD ARGUE THAT IT FALLS SHORT OF THE WRITTEN WARNING, ONE WOULD EXPECT, ACCORDING TO THE OTIS STANDARD AGREEMENT AND ALSO NEVER ADDRESS THE HARNESS ISSUE IT (THE LETTER) WAS TO DISCUSS.

IN GOOD FAITH I CAN MAKE THE FOLLOWING STATEMENT. IF YOU DIG BEYOND THE SURFACE YOU WILL FIND THAT RUSS LARSON HAS UNDERLING REASONS FOR TERMINATING MY EMPLOYMENT.

YOURS TRULY,

*[signature]*

JOHN DERAY

PLAINTIFF'S EXHIBIT
CASE NO. CV 2139
EXHIBIT NO. 17

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DeRAY, | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02-CV-2139 (JCH) |
| | : | |
| VS. | : | |
| | : | |
| RUSS LARSON ET AL. | : | |
| Defendants | : | DECEMBER 10, 2003 |

### DEFENDANT, DOMINIC ACCARPIO'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF PLAINTIFF JOHN DERAY DATED AUGUST 27, 2003

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Dominic Accarpio hereby submits his responses to the Interrogatories and Requests for Production of Plaintiff John B. DeRay's "Second Set of Interrogatories and Request for Production to Dominic Accarpio Business Representative of Local 91," which was served upon Attorney J. William Gagne, Jr. by hand-delivery on October 2, 2003.

### INTERROGATORIES

Plaintiff's first request for interrogatories and request for production included any material you have in your possessions that pertained to defendants IUEC and Ron Koerbels request for production, Dated June 16, 2002. You did not respond to that request nor did you object to it. If you have no material pertaining to that request, make that you answer. Otherwise, Respond:

RESPONSE: None.

You did not answer Interrogatory #10, nor did you object

RESPONSE: Do not know.

1. What would be the customary union position to an unnecessary and ridiculous policy a supervisor was trying to enforce?

RESPONSE: See International Response #3.



2.   In Ron Koerbels notes Dated March 14, 2002. In part states: "Dominic Accarpio stated he had no knowledge of the letter." On March 14, 2002 did you make that statement to Ron Koerbel, Ernest Lowe, or who ever attended that meeting?

RESPONSE: Cannot answer until you identify letter and provide a copy to my attorney.

3.   Did you tell Ron Koerbel and Ernest Lowe from Otis that I was in violation of safety policy?

RESPONSE: I do not recall.

4.   Your response to Interrogatory #15 indicates that a safety harness on an elevator operator will increase his safety in the performance of his duties. How is safety increased?

RESPONSE: See International Response #14.

5.   Follow up to interrogatory #17. To what extent did you investigate the alleged Otis policy that was used to terminate the plaintiff?

RESPONSE: I can not answer.

### Requests for Production

6.   Any written agreement, contract or safety condition that the plaintiff violated in the performance of his duties as an elevator operator either by the contractor or by OSHA of by OTIS or by Local 91?

RESPONSE: To be provided as soon as I can get a copy.

7.   At which of the E Board meetings that I attended did you promise to back me in my refusal to ware a harness? And why did you say I was right?

RESPONSE: I can not recall.

DEFENDANT,
DOMINIC ACCARPIO

By: _____
His Attorney
J. William Gagne, Jr.
Law Office of J. William Gagne, Jr.
& Associates, P.C.
1260 Silas Deane Highway
Wethersfield, CT 06109
Tel: (860)522-5049
Fax: (860)571-6084
Fed. Bar No. ct 02126

## CERTIFICATION

This is to certify that on this 10th day of December, 2003, a copy of the foregoing was mailed first class, postage prepaid to the following pro se party and counsel of record:

John B. DeRay
1078 New Britain Avenue
Apt. 104
West Hartford, CT 06110

Robert Matisoff, Esquire
Keith R. Bolek, Esquire
O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
Tel: (202) 362-0041
Fax: (202) 237-1200

Edward J. Dempsey, Esquire
United Technologies Corporation
United Technologies Building
Hartford, CT 06101
Tel: (860) 728-7858
Fax: (860) 728-6551

_____
J. William Gagne, Jr.

Otis Elevator Company

North American Area
242 Pitkin St
East Hartford, CT
06108


Otis
A United Technologies Company

February 6, 2002

To: John Deray

Reference: Unsatisfactory Performance- Article XXII, Par. 4(c)

Dear John,

    Because you continue to violate the Otis safety policy regarding harnesses on construction sites, I have no alternative other than to terminate your employment with Otis Elevator Company effective immediately.

*R Larson*

Russ Larson
Construction Superintendent

cc:   Dom Acarpio, Business Agent Local 91
      Personal files
      Jeff Hastings, Otis Regional Manager



PLAINTIFF'S EXHIBIT
CASE NO.
EXHIBIT NO. 19

Certification of Service

A True and attest copy of the forgoing <u>Exhibits 16-17-18-19</u>
<u>Feb. 6 2002 Termination Letter</u>
<u>Elevator Constructor, Feb. 12, 2002 Document</u>
<u>and Accarpio responces to Interrogatory's 2</u>
was mailed first class mail or hand delivered to:

William Gagne Jr.

1260 Silas Deane Highway

Wethersfield, CT 06109

Keith R. Bolek

O'Donoghue & O'Donoghue

4748 Wisconsin Ave N.W.

Washington, DC 20016

On <u>December 26 2003</u>

Edward Dempsey

United Technologies Corp.

United Technologies Bldg.

Hartford, CT 06101

By the plaintiff

*John DeRay*