UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

2003 DEC 29  P 3:25

JOHN B. DeRAY,

    Plaintiff,

v.                            Case No. 3:02-CV-2139 (JCH)

RUSS LARSON, et al.,

    Defendants              Date December 26 2003

**COUNTER AFFIDAVIT TO DOMINIC ACCARPIOS
SWORN STATEMENTS (AFFIDAVIT)**

The opening paragraphs outline a basic procedure as described in article XV of the CBA. In this case the grievance began with a dispute over an alleged safety policy Russ Larson Otis supervisor at the Mohegan Sun construction site. It was November 2001 Otis operators were told they had to wear a safety Harness to operate Elevators or get off the Job. DeRay and White left the area and called the Business Representative Dominic Accarpio. Accarpio was made aware of the dispute and he promised to straighten it out. In paragraph 5 Accarpio states Article XV paragraph 2 provides that the first step is the " Oral Step" but there is also a paragraph 1, which states any differences or dispute regarding the application and construction of this agreement, shall be referred to as a "grievance" and shall be resolved under the following procedure. Both parties commit, to making an earnest effort to resolve differences in accordance with the procedure outlined below:

1

When you combine paragraph 1 and 2 you have a grievant and a Business Representative and an Otis Representative, which provides for an oral discussion of the grievance within (10) working days. There can be no question that the grievance is known so what happened to the "Oral Step"? 15-65 Requires the grievant be given due notice of the meeting. There is no record that the oral step ever took place.

In paragraph 6 Accarpio states if an employee initiates the grievance process I (Accarpio) or another representative of the union must be present at the discussion between the employee and the employer. In this case it's fair to say the employee did initiate the grievance, but to initiate does not or cannot mean without representation.

Paragraph 7 if the grievance is not resolved by the oral step Article XV paragraph 3 provides that pursuant to the next step, known as "written step one", the grievant will submit a written grievance on provided forms within (10) days of the conclusion of the oral step.

Paragraph 8 Accarpio states, generally, at this stage, the employee will come to me, and I file the grievance electronically on his behalf. This employee had already contacted Accarpio and he did nothing. Discriminatory Representation is bad faith.

Paragraph 9 & 10 apparently follow an electronic entry, which is an Accarpio exclusive, so at this point the grievant received no representation through the union or through the company.

Paragraph 11 Accarpio states the plaintiff did not comply with the grievance procedures set forth in Article XV in that he did not initiate or request an oral step meeting after the termination of his employment. I, the plaintiff, was ready willing and able to commit to making an earnest effort to resolve the differences of the dispute long before being fired, but no "Oral Step" meeting was ever scheduled.

Paragraph 12 states: The plaintiff did not comply with the grievance procedures set forth in Article XV in that he did not file a grievance in proper form after the termination of his employment. Yet paragraph 8 Accarpio states I (Accarpio) file the grievance electronically on his behalf. The dispute was well established when DeRay and White (see affidavits) walked off the site and called Accarpio. But there was no "Oral Step". Accarpio in his affidavit does not mention the December 10th 2001 documented grievance Exhibit 2. It was only the plaintiff DeRay who was displaying an earnest effort to settle the dispute. Exhibit 16 is a publication of the elevator constructor the bottom line states I am a building tradesman, belonging to a building trades union. Because I am, I need truckle neither to king nor Tycoon. The Harness dispute concerned the union because a harness can be detrimental see Exhibit 1.

3

Paragraph 13 Accarpio states: A document submitted and dated February 12, 2002 that does not constitute a grievance within the meaning of Article XV. It should be Deemed unfair if the union has a trick or a special pass word or an electronic device to get a grievance processed.

15-65 Unions Duty of fair Representation states in section 3, The employee must have an opportunity to present their position at a hearing an must be given due notice of such a hearing. There's also lots of case law, but this says it all, case law simply backs it up.

Fair Representation 15-65 sec 10

Case Illustrations:

There was sufficient evidence to support conclusion of arbitrary conduct by union which filed employee's grievance with management representative with whom employee had previously been embroiled in a fistfight at local hockey game, where grievance could have been submitted to another management representative. Union breached its duty and acted arbitrarily by failing to process grievances based on seniority of employees terminated relative to those retained where there was no evidence that union had ever investigated or made any judgment concerning the merits of the grievances, even though its inaction was not motivated by hostility, discrimination, or dishonesty.

**By showing that grievance was perfunctorily processed**

Short of arbitration, the union can cure any errors or omissions in its presentation of an employee's grievance by requesting review at a higher level. Whether a union breaches

its duty by an inadequate or negligent presentation at arbitration (or at a prior stage if it allows the time for review to expire) where the union is not motivated by hostility, discrimination, or dishonesty seems very much an open question at present. Vaca v Sipes stated that the union could breach its duty by processing a grievance perfunctorily. However, the court did not define "perfunctorily." Clearly, the duty would be breached if the union were to "throw" the case or conspire with the employer to procure an arbitrator's decision by fraud, so that the procedure was a sham. To what extent does conduct short of this extreme constitute a breach of duty? The court held that allegations that a union had made no effort to ascertain the falsity of charges against employees discharged for submitting excessive motel receipts, and that the union's inaction was motivated by hostility, stated a cause of action against the union for breach of duty to fairly represent them in handling the grievance before an arbitrator. Whether proof of a union's failure to make reasonable inquiry into the facts of a grievance would constitute breach of its duty of fair representation without proof of hostility or bad faith is unsettled.

Case Illustrations:

Evidence that union representative failed adequately and fully to prepare discharged employee's defense at hearing and failed to present relevant facts to other union officers in attendance did not prove union's breach of duty; negligence or poor judgment is not a breach. Union breached its duty of fair representation where its presentation in employee's behalf before an arbitrator was perfunctory, as evidenced by its lack of knowledge of crucial papers, its failure to present adequately employee's claim that his

discharge was based on racial discrimination, and its failure to notify him of the arbitration hearing although the union knew that no other witness would testify for him so that his presence was essential for a fair hearing.

See, for example, Minnis v International Union, United Auto., etc. (CA8 Mo) 531 F2d 850 (evidence that union arbitrarily ignored grievance and failed to make even minimal attempt to investigate its merits was sufficient to take case to jury, although union would not be liable for good faith negligence and poor judgment).

**PROOF OF UNION'S BREACH OF DUTY OF FAIR REPRESENTATION**

### A. Elements of Proof

Guide and checklist

**The following facts and circumstances, among others, tend to establish that the union breached its duty of fair representation:**

- Plaintiff was employee of company where workers were represented by union [§§ 13, 22]
- Plaintiff was aggrieved (discharged) [§§ 13, 16, 22]
- Union refused to investigate merits of grievance [§§ 15, 18, 20, 26, 29, 35]
- Plaintiff filed timely grievance with union [§§ 17, 30, 32]
- Union was motivated by hostility toward plaintiff [§§ 19, 20, 27, 28, 35]
- Union discriminated against plaintiff's status [§§ 19, 21, 24, 25, 31, 32, 33, 34, 35]
- Union was exclusive bargaining representative [§ 23]
- Union refused to process grievance [§ 35]

See Accarpio Responses to second Interrogatories Exhibit 18.

Paragraph 15 Accarpio affidavits in paragraph 15 goes all out in order to cover up his tracks with a claim that on March 14, 2002 I met with the plaintiff and with Ronald Koerbal in an attempt to resolve this matter. Untrue Bad Faith Exhibit 12 he did not meet with plaintiff March 14, 2002.

Paragraph 16 more bad faith March 14, 2002 Accarpio meets with Mr. Koerbal and Ernest Lowe, Otis Labor Relations.

Paragraph 17 his representation very simply sells the merits of the plaintiffs case down the river. Interrogatories from Accarpio Exhibit 7 contradict his own testimony

1. Did you ever make the statement to me at an E board meeting to the effect that the requirement of an operator to wear a harness is unnecessary and ridiculous? I will back you on your refusal to where the harness because on this issue you are right?
   Response: Yes

2. Was the plaintiff hired by Otis to operate an elevator at the Bushnell Theater through Local 91?
   Response: Yes

   Does this not buttress an operator position being denied by Koerbal in paragraph 6-8, 9, 10, 11, 12, and 13 of Koerbal Affidavit?

   Accarpio's Response to Interrogatory # 5

7

What if any forms of construction work are elevator operators required performing in their duties as operators?

Response: None, elevator operators are not required to perform construction work. Does this not prove there is a non-written classification for operator and that they are not part of the construction crew?

Paragraph 18 states I (Accarpio) determined that the plaintiffs purported grievance of the termination of his employment had no merit and the union would not peruse such grievance. Accarpio never pursued any grievance submitted by the plaintiff.

Paragraph 19 Reflects Accarpio's understanding, which is supported by nothing and it's untrue because if it were true Plaintiff would have 1. Required representation 2. Filed law suit

Paragraph 20 I recall the meeting with Koerbal Accarpio and White. Accarpio lied to Koerbal stating I never notified him of a grievance. Koerbal had to terminate the meeting over this dispute. Koerbal suggested I contact Otis Labor Relations which I did in a letter dated May 30, 2002 Exhibit 13.

Paragraph 21 is untrue I asked to be shown in writing a requirement supporting such a requirement. I was shown nothing. Dominic Accarpio reiterated that he agreed with me that such a requirement was unnecessary and ridiculous.

The written notice requirement in Article XXII paragraph 4 (e)
It is understood and agreed that prior to terminating an employee for unsatisfactory performance who is to be replaced under this paragraph or any other employee, the Company will give a written warning to the employee with a copy to the Business Representative in order that the employee be given an opportunity to improve his work performance. Such a termination may be submitted as a grievance to the National Arbitration Committee as provided under Article XV as a final source of appeal. Exhibit 17
The written notice was substituted with a memorandum to all construction personal Exhibit 4. The plaintiff was not on construction. Summery Judge meant should be denied.

This counter-affidavit is the truth and sworn before a notary public by the plaintiff John DeRay.

*John DeRay* (signature)

Personally appeared, John DeRay, this 26 Day of December, 2003

KIMBERLY FORESHA
NOTARY PUBLIC
MY COMMISSION EXPIRES NOV. 30, 2008

*Kimberly Foresha* (signature)

9