UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Bridgeport Division

FILED

2004 JAN 13  A 9: 53

US DISTRICT COURT
BRIDGEPORT CT

JOHN B. DeRAY,

      Plaintiff,

v.

Case No. 3:02-CV-2139 (JCH)

RUSS LARSON, *et al.*,

      Defendant.

**REPLY BRIEF OF DEFENDANTS IUEC AND KOERBEL
TO PLAINTIFF DeRAY'S OPPOSITION TO THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

On December 29, 2003, Plaintiff John B. DeRay filed opposition papers (rec. doc. nos. 59-67)[1] to the Motion for Summary Judgment filed by Defendants International Union of Elevator Constructors, AFL-CIO ("IUEC") and Ronald J. Koerbel ("Koerbel") (rec. doc. no. 49). Defendants IUEC and Koerbel submit this Reply Brief to Plaintiff DeRay's opposition papers.[2]

### I.    ARGUMENT

**A.**    <u>There is No Genuine Issue of Material Fact as to Plaintiff DeRay's Claims Against the IUEC and Koerbel Being Time-Barred</u>

In his opposition papers, DeRay disputes the IUEC's and Koerbel's defense that DeRay's claims are time-barred by the six-month statute of limitations for hybrid duty of fair representation/breach of collective bargaining agreement actions. (Rec. Doc. No. 64 at 1-2; Rec.

---

[1] For convenience, Defendants IUEC and Koerbel will refer to the several documents comprising DeRay's opposition by docket number and page number.

[2] In his opposition papers, DeRay does not respond to the Defendant's claim that the Plaintiff cannot maintain an action against Koerbel in his individual capacity. *See Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999). The Defendants respectfully request the Court grant summary judgment and dismiss the claims against Koerbel with prejudice.

Doc. No. 66 at 1.) *See, generally, DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155 (1983) (holding statute of limitations for action under Section 301 of the Labor-Management Relations Act is six months). DeRay asserts that in order for the statute of limitations to expire, "all deceitful, dishonest or fraudulent activities must become known or reasonably known to the Plaintiff." (Rec. Doc. No. 64 at 2.) DeRay asserts that IUEC Regional Director Ronald Koerbel, IUEC Local 91 Business Manager Dominic Accarpio and Otis Elevator Company representative Earnest Lowe "acted deceitfully by bringing to a close the Plaintiff[']s grievance" at a March 14, 2002 meeting, citing *Vargas v. Hill*, 152 F. Supp.2d 315, 319 (S.D.N.Y. 2001). (*Id.*) Yet, in *Vargas*, the court did not address the statute of limitations issue; instead, it addressed the duty of fair representation issue on the merits.

Defendants IUEC and Koerbel set forth the standard in their Memorandum of Support, viz., the statute of limitations for a breach of the duty of fair representation claim begins when the plaintiff "learns of the union action or inaction of which he complains." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989). The plaintiff then must file the lawsuit within six months of the date that he or she learns of the complained action or inaction.

The undisputed evidence establishes that DeRay admits that he prepared a February 22, 2002 letter threatening to sue the IUEC, Koerbel, IUEC Local 91, Accarpio, Otis and others on the same grounds as those set forth in the Complaint in this case. (*See* Deposition of John B. DeRay ("DeRay Dep."), Exhibit 9; DeRay Dep. at 82-83.)[3] DeRay admits, once again, in his opposition papers that he prepared the February 22, 2002 letter threatening to sue the Defendants on the same grounds as set forth in the Complaint. (*Compare* 7) These undisputed facts

---

The deposition of DeRay, with exhibits, and the affidavit of Ronald J. Koerbel, with exhibits cited *infra*), are attached to the Defendants Rule 56(a)1 statement, which can be found at Rec. Doc. No. 37.

establish that DeRay had actual notice of the alleged breach of the collective bargaining agreement pertaining to his termination for failing to abide by the harness policy. Moreover, even his admission regarding his intent to sue the Unions and their representatives, these facts also establish DeRay's knowledge of the alleged inaction by the Unions pertaining to his "grievances" over the harness policy and his termination. Thus, the statute of limitations began, at the latest, February 22, 2002, which is more than six months prior to the filing of the complaint on December 4, 2002. That statute of limitations continued to run even if DeRay held out hope that the IUEC or IUEC Local 91 would take some action on his behalf. *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995).

Accordingly, DeRay fails to raise any genuine issue of material fact as to whether his claims against the IUEC and Koerbel are time-barred. Defendants IUEC and Koerbel respectfully request the Court dismiss all of DeRay's claims with prejudice as being time-barred.

**B.   DeRay Fails to Raise any Genuine Issues of Material Fact as to Whether the IUEC Acted Arbitrarily, Discriminatorily or in Bad Faith**

As discussed extensively in the moving papers, the IUEC determined DeRay's complaints had no merit because he willfully and steadfastly ignored the directives of his supervisor and requests of his business manager to comply with the safety harness policy while he was operating an elevator cab on a construction site. DeRay does not dispute his willful disregard of the instructions and requests. Thus, the only issue is whether the IUEC acted arbitrarily, discriminatorily or in bad faith by refusing to process a grievance relating to the safety policy and to the termination of DeRay because of his conduct. The answer must be in the negative. As the IUEC noted in its Memorandum in Support, it has an interest in the safety of its members and in promoting the use of fall protection equipment on construction sites. (Defs. Memo in Support at 30.) Even if the Union disagreed with some aspect of Otis' policy or even

3

had some sympathy for DeRay, it was reasonable for the Union to conclude that DeRay's willful and continued violation of the safety policy went too far and any grievance would not succeed in arbitration. *See Crider v. Spectrulite Consortium*, 130 F.3d 1238, 1243-44 (7th Cir. 1997)

1. <u>DeRay Never Properly Invoked the Grievance Procedure</u>

Generally, in his opposition papers, DeRay claims that the IUEC breached its duty of fair representation by either failing to file a "grievance" on his behalf or failing to process the "grievances" that he filed on his own. At one point, DeRay asserts that he never claimed to have filed a "grievance." (Rec. Doc. No. 64 at 5.) At another point, DeRay asserts that his actions constituted a "grievance" sufficient to invoke the grievance procedure. (Rec. Doc. No. 66 at 3.) Then DeRay claims to have tried to invoke the grievance procedure but the "Union" failed to process his grievances. (*Id.* at 4.) Despite DeRay's shifting assertions, the undisputed facts establish that he failed to follow the grievance procedure and, even assuming that he did, he could not establish any genuine issue of material fact as to whether the IUEC breached its duty of fair representation by failing to process any such "grievance."

Assuming the facts in the light most favorable to DeRay, as the Court must, DeRay drafted two letters, one dated December 10, 2001 and another dated February 12, 2002, that he intended to constitute "grievances." (*See, generally*, Rec. Doc. No. 64 at 3.) Even assuming those facts, DeRay fails to create any genuine issue of material fact concerning his failure to invoke the grievance procedure.

It is undisputed that the *first* step of the grievance procedure is the Oral Step. (*See* Affidavit of Ronald J. Koerbel ("Koerbel Aff.") ¶18; Koerbel Aff., Ex. 1 at 60.) Bargaining unit employees can initiate a grievance and invoke the Oral Step by discussing the grievance with the designated Company representative; however, the Local Business Representative must be

present during the discussion. Given it is the employee's grievance, he or she should obtain the union representative before going to speak with the designated company representative. An employee cannot proceed to the next step, *i.e.*, Written Step One, until the Oral Step is completed. (*See* Koerbel Aff., Ex. 1 at 60-61 (stating "[i]f the issue remains unresolved after the conclusion of the Oral Step....").) Furthermore, while Otis Agreement contains a provision concerning discharge grievances, that provision provides that the termination "may be submitted as a grievance to the National Arbitration Committee as provided in Article XV as a final source of appeal." (Koerbel Aff. Ex. 1 at 87.) Article XV provides that only the Union or the Company can appeal to the National Arbitration Committee, which happens to be the stage after the Written Step One, *i.e.*, Written Step Two. (*Id.* at 60-62.)

With respect to both of DeRay's self-styled "grievances," it is undisputed that he never notified the union representative of any Oral Step with respect to his grievances. (*See* DeRay Dep. at 60-61 (discussing DeRay's alleged Oral Step confrontation with supervisor over December 10 "grievance" and failure to ensure union representative was present); at 80 (stating DeRay never asked for an Oral Step concerning his termination).) Rather, DeRay passed over the Oral Step and sought to go directly to Written Step One himself with respect to his December 10, 2001 "grievance" and to Written Step Two with respect to his February 12, 2002 "grievance." These facts are undisputed, evidenced by his own documents: the December 10, 2001 "grievance" seeks to invoke Written Step One (DeRay Dep. Ex. 5); and the February 12, 2002 "grievance" is addressed to the National Arbitration Committee (DeRay Dep. Ex. 8).

DeRay does not dispute that he knew the provisions of the grievance and arbitration procedure. (*Compare* Defs. IUEC & Koerbel's Rule 56(a)1 Statement, Par. 44 *with* Rec. Doc. No. 60 at 2 *and* Rec. Doc. No. 62 at 1.) While these provisions permit an employee to invoke

the initial steps, they require the participation of the Union (either IUEC Local 91 or IUEC). The Union (*viz.*, the IUEC), and not the employees, has the authority to invoke the later stages of the procedure, such as Written Step Two and arbitration. DeRay ignored these provisions, acting on his own to pursue his own personal interpretation of company safety policies regarding safety harnesses on a construction site. Rather than seeking the aid of IUEC Local 91 or the IUEC at the initial stages, DeRay simply expected the Unions to continue his battle despite having left the Unions behind. Adherence to the requirements of the grievance procedure is an unquestionable obligation. The parties designed this procedure to allow those ultimately in control of the procedures to exercise their discretion to weed out frivolous grievances and litigate meritorious grievances in a cost-effective manner. *See, generally, Vaca v. Sipes*, 386 U.S. 171, 191-92 (1967). If employees were allowed to circumvent the procedures or otherwise force the parties to process or arbitrate unmeritorious grievances, then the very beneficial purposes of these procedures are lost. *Vaca*, 386 U.S. at 191-92.

Having failed to show there are any genuine issues of material fact, the IUEC and Koerbel are entitled to judgment as a matter of law. DeRay's failure to properly invoke the grievance procedure meant that there were no grievances to process. Nevertheless, IUEC Regional Director Ronald Koerbel met with IUEC Local 91 Business Manager and Otis Representative Earnest Lowe on March 14, 2002. While the meeting was to address properly filed grievances that were properly processed to Written Step One, these individuals discussed DeRay's February 12, 2002 document. Lowe informed Koerbel that Lowe received a February 12, 2002 letter from Plaintiff DeRay protesting his termination and then showed Koerbel the letter. (Koerbel Aff. ¶ 22.) Accarpio explained DeRay's steadfast refusal to adhere to Otis' safety policy, despite the instructions of his supervisor and the request of Accarpio to

comply, which ultimately led to DeRay's termination. (Koerbel Aff. ¶ 23.) Based upon this information, Koerbel agreed with Lowe and Accarpio that the dismissal was just. (*Id.*) Thus, the IUEC went further than it was required by discussing DeRay's February 12, 2002 "grievance"; however, the Union concluded that there was no merit to DeRay's claims. Under these circumstances, DeRay cannot establish that the IUEC acted arbitrarily, discriminatorily or in bad faith.

> 2. DeRay Cannot Establish that the IUEC's Refusal to Process DeRay's Self-Styled "Grievances" was Arbitrary, Discriminatory or in Bad Faith

DeRay contends, nonetheless, that the March 14, 2002 meeting constitutes an act of dishonesty and fraud because the Defendants allegedly conspired to bring his grievances to an end. As discussed above, the undisputed facts show that Lowe raised the issue of DeRay's "grievance," which was not even properly before the group, and everyone discussed the merits and agreed that the termination was just. DeRay contends that this meeting was held in bad faith. (Rec. Doc. No. 62 at 3.) "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Morris v. Local 819, Int'l Bhd. of Teamsters*, 954 F. Supp. 573, 576 (E.D.N.Y. 1997), *aff'd*, 169 F.3d 782 (2d Cir. 1999). He must raise specific facts that create a genuine issue of material fact for a jury to consider. *Beckman v. United States Postal Svc.*, 79 F. Supp.2d 394, 404 (S.D.N.Y. 2000) (noting failure of plaintiff to raise specific facts showing union acted arbitrarily or in bad faith).

A union acts in bad faith, for purposes of the duty of fair representation standard, when it acts deceitfully, dishonestly or fraudulently. *Vargas v. Hill*, 152 F. Supp.2d 315, 319 (S.D.N.Y. 2001). DeRay does not proffer any evidence of deceit, dishonesty or fraud; instead, he just labels the Defendants' undisputed facts as evidence of such nefarious undertakings. DeRay cannot contend that the IUEC deceived him at any point prior to his termination because he

admits that he never contacted the IUEC or any of its representatives, such as Regional Director Koerbel, until after he was terminated. The undisputed facts establish that Koerbel determined, based upon his discussion with Lowe and Accarpio on March 14, 2002, that there was no merit to DeRay's complaints. This meeting is not evidence of bad faith, as the parties had no reason to consider DeRay's complaint given his failure to comply with the grievance procedure. They nevertheless considered the complaint and found it to lack merit.

DeRay also contends in his opposing papers that his grievance had merit. DeRay contends that the Otis Safety Policy did not apply to him because he was not "on construction." (See, e.g., Rec. Doc. No. 66 at 2-3.) Rather, in DeRay's view, he was performing a service when he operated an elevator car *on a construction site* and such service work does not require the wearing of a harness. (*Id.* at 3.) DeRay further takes issue with the IUEC's claim that he was performing construction work, labeling it as "false" and "misleading." (*Id.*)

The IUEC argued that Articles IV and IV of the Otis Agreement defines "construction work" to include the "operating of temporary *cars*," which includes cars in temporary elevators and cars in permanent elevators used temporarily to transport construction materials and personnel. (*See* Koerbel Aff. ¶¶ 6-8; Koerbel Ex. 1 at 4, 8, 24.) DeRay challenges this construction by claiming that Article IV, Paragraph 3 defines temporary *elevators* and his personal interpretation of the contract to find that this definition applies to Article III, Paragraph (r), thereby limiting "temporary cars" to only those cars in "temporary elevators."

Article IV, Paragraph 3 provides that whatever work in connection with the assembly and disassembly, or moving of such elevators from job to job at the work site shall be performed by bargaining unit employees. That section does not address the operation of the cab in the

8

temporary elevator once assembled or the operation of a cab in other elevator on a construction site. Paragraph 3 also does not purport to define "temporary *cars*" in Paragraph 2.

DeRay's argument also suffers from a fatal flaw in logic. Collective bargaining agreements define the work performed by the employees in the bargaining unit. If the work in question does not fall within the definitions of work covered by the agreement, then the employees performing that work would not fall within the scope of the bargaining unit. Thus, if the operation of cabs on a construction site is not construction work under Article VII of the Otis Agreement, then it must fall under another provision of the Agreement. The only other types of work governed by the Otis Agreement are repair work, which is covered in Article VIII; modernization work, which is covered in Article VIII(A); and contract service work, which is covered in Article IX addresses contract service work. (Koerbel Aff. ¶ 6.) Article IX defines "contract service" work as "any contract obtained by the Company for regular examination or care of apparatus enumerated in Article IV and Article IV(A) of this Agreement and general repairs as indicated in Article VIII, Par. 2 for a period of not less than one (1) month." (Koerbel Aff., Ex. 1 at 40.) DeRay does not establish where such work, under his definition of "service work" is covered by the collective bargaining agreement. If the Otis Agreement does not cover the work, then DeRay would not have been covered by the Agreement when he performed the work, thereby depriving him of access to the grievance procedure.

Whether the IUEC is correct in its interpretation of Article IV, Paragraph 2 is immaterial. Rather, our inquiry is limited to whether the union took a position on the basis of an informed, reasoned judgment regarding the merits" of the employee's claim. *Spellacy*, 156 F.3d at 127. Absent evidence of arbitrariness or bad faith, a court should defer to the union's interpretation of the agreement. *Beckman v. United States Postal Svc.*, 79 F. Supp.2d 394, 404 (S.D.N.Y. 2000).

As discussed in the Memorandum in Support and this Reply Brief, there is no evidence of arbitrariness or bad faith on the part of the IUEC. The Union made a determination that DeRay's complaints did not have merit based upon the uncontested facts that DeRay willfully and continually defied a safety rule despite his supervisor's instructions and his business manager's requests. Under these circumstances, DeRay cannot establish any genuine issues of material fact as to whether the IUEC acted arbitrarily, discriminatorily or in bad faith, let alone reach the other high burden of proof required to prevail outright on the merits.

## II. CONCLUSION

Accordingly, for the foregoing reasons and as more fully discussed in the moving papers, Defendants International Union of Elevator Constructors, AFL-CIO and Ronald J. Koerbel respectfully request that the Court grant their Motion for Summary Judgment and dismiss all of the claims against them with prejudice.

DATED: January 18, 2004

Respectfully submitted,

By: _____
Robert Matisoff (Bar No. ct05002)
Keith R. Bolek (Bar No. ct24482)
**O'DONOGHUE & O'DONOGHUE**
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 362-0041 – Telephone

By: _____
J. William Gagne (Bar No. ct02126)
**J. WILLIAM GAGNE & ASSOCS.**
1260 Silas Deane Highway
Wethersfield, CT 06109
(860) 522-5049 – Telephone

Attorneys for Defendants International
Union of Elevator Constructors, AFL-CIO
and Ronald Koerbel

1915_1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the Reply Brief of Defendants IUEC and Koerbel to Plaintiff DeRay's Opposition to Defendants' Motion for Summary Judgment was served by first class mail, postage prepaid, on this 12th day of January 2004, upon the following:

    *Pro Se* Plaintiff:        John B. DeRay
                                        1078 New Britain Avenue, Apt. 104
                                        West Hartford, Connecticut 06110

Counsel for Defendants
Otis, Larson, Hastings
and Lowe:                  Edward J. Dempsey
                                UNITED TECHNOLOGIES CORP.
                                United Technologies Building
                                Hartford, CT 06101

Counsel for Defendants
IUEC Local 91 and
Accarpio                   J. William Gagne (Bar No. ct02126)
                                J. WILLIAM GAGNE & ASSOCIATES
                                1260 Silas Deane Highway
                                Wethersfield, CT 06109

                                                                _____
                                                                 Keith R. Bolek

2254_1