## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DeRAY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02-cv-2139 (JCH) |
| v. | : | |
| | : | |
| RUSS LARSON, ET AL, | : | SEPTEMBER 29, 2004 |
| Defendants. | : | |

### RULING ON DEFENDANTS' JOINT MOTION TO STRIKE [DKT. NO. 79], MOTION TO DISMISS [DKT. NO. 36], AND MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 34, 37, & 49]

Plaintiff John DeRay ("DeRay") brings this hybrid Section 301/fair representation suit pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  DeRay alleges that defendant Otis Elevator Company ("Otis") breached the *Otis Elevator Company Agreement With International Union of Elevator Constructors, July 9, 1997 to July 8, 2002*, the collective bargaining agreement ("CBA") in force at the time of DeRay's employment at Otis, and that defendants, International Union of Elevator Constructors ("IUEC"), International Union of Elevator Constructors, Local 91 ("Local 91", together with the IUEC, the "Union"), Ronald Koerbel (in his official capacity) ("Koerbel"), and Dominic Accarpio (in his official capacity) ("Accarpio"), failed or refused to represent DeRay in connection with his grievance against Otis, in breach of their duty of fair representation.  Accarpio filed a motion to dismiss [Dkt. No. 36] for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Otis [Dkt. No. 34], IUEC and Koerbel [Dkt. No. 37], and Local 91 [Dkt. No. 49] filed motions for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  The defendants also jointly filed a motion to strike [Dkt. No. 79] several

sur-replies filed by DeRay [Dkt. Nos. 74 & 78] and the attached affidavit of Jude White.

For the reasons that follow, defendants' motions are **GRANTED IN PART**, and **DENIED**

**IN PART**.

## I.    BACKGROUND[1]

DeRay was hired by Otis as an elevator mechanic in May 2001.  DeRay worked

at several locations during the course of his employment, including at an Otis

construction site at the Mohegan Sun casino.  Prior to beginning work at Mohegan Sun

in the summer of 2001, DeRay underwent safety training provided by Otis and received

a copy of the Otis Safety Manual.  This manual contains a section on fall protection that

reads in pertinent part:

> On construction, a safety harness[2] or fall protection uniform[3] and shock
> absorbing lanyard shall be worn at all times.  The lanyard must be connected at
> all times when there is an exposure to a fall of six feet (two metres) where
> guardrails are not present for protection.

There are four exceptions given to this rule:

> A.    The harness or fall protection uniform does not have to be worn if an Otis
> associate is attending a meeting at a site construction office and no other
> work activities are involved.

> B.    The project will no longer be considered a construction site when the
> contractor has obtained an occupancy permit.

> C.    All elevators/escalators have been placed on final acceptance.

---

[1]  The facts set forth are either undisputed or taken in the light most favorable to the
plaintiff.

[2]  A safety harness is a set of straps that go between the legs, around the stomach, over
the shoulders and across the chest.  The straps are two inches wide, and there is a hook on the
back.  The lanyard would be hooked on the back.

[3]  A fall protection uniform is a pair of overalls with a built-in harness.

    D.     A "handover" to Service has been completed and construction work is 100% completed on all elevators/escalators.

While working at Mohegan Sun, DeRay was assigned to operate an elevator temporarily being used by Otis to transport construction workers and materials. The site contained forty such elevators. Several of them had not been turned over to Mohegan Sun, including the elevator operated by DeRay. Russ Larson, DeRay's immediate supervisor, required all elevator operators at the Mohegan Sun site to wear safety harnesses.

DeRay initially did not wear a safety harness while he operated the elevator at Mohegan Sun. Larson observed DeRay working without a safety harness, and Larson ordered DeRay to either put on a safety harness or leave the job site. DeRay refused to put on a harness, went down into the casino, and called Local 91's business representative, Dominic Accarpio. Accarpio told DeRay to return to the construction site and wear a harness, and that Accarpio would straighten out the situation in a couple of days. DeRay did as he was instructed and put on a fall protection uniform with harness.

On or about November 27, 2001, DeRay went to Larson's office and spoke with him. Larson told him to keep wearing a safety harness while operating his elevator, or DeRay would be fired. DeRay left Larson's office "disarrayed, speechless, bothered and bewildered," upset at Larson's treatment of him. DeRay decided not to wear the safety harness any longer. He did not wear a harness to work the next day. On November 29, Larson again instructed DeRay to put on a safety harness while operating his elevator and told DeRay he would check up on him. DeRay did not put on

-3-

a safety harness. DeRay confronted Larson on December 4 or 5 concerning Larson's instructions. No union representative accompanied DeRay. DeRay felt Larson had unjustifiedly embarrassed him in front of other Otis employees, and that it was unnecessary to wear a safety harness while operating an elevator. DeRay returned to work after the confrontation and continued working without a safety harness.

Article XV of the CBA lays out a four-step grievance and arbitration procedure. Step One is called the Oral Step and requires an employee who initiates a grievance against Otis to discuss the grievance with a designated Otis representative in the presence of a union representative within ten days of the cause of the grievance. If this step fails to solve the issue, the parties move to Written Step One. Written Step One requires the employee to submit a written grievance to Otis on forms provided by Otis. The Union's local business manager and regional director will meet with Otis representatives within fifteen days of the filing of the written grievance to discuss it. Otis will then produce a written answer to the grievance, which the Union may appeal within ten days. If the grievance is appealed, the parties move to Written Step Two during which the grievance is placed on the agenda of the National Arbitration Committee. Finally, if the disposition of the grievance before the Committee is not accepted, either side may appeal it to arbitration.

DeRay read and became familiar with the CBA's grievance process. On December 10, 2001, DeRay had Local 91's secretary type up a document addressed to "The designated company representative who shall be discussing the grievance brought to the attention of Russ Larson due the fact that the grievance centers around Mr. Larson." This document briefly described a two-fold grievance against Larson

-4-

pertaining to an "alledged [sic] policy" and the "supervisory violation of 0 tolerance", stemming from the November 27 encounter. DeRay left this document on the desks of Jeff Hastings, Otis' regional director, and Accarpio. DeRay continued to operate his elevator without a safety harness.

On January 28, 2002, Larson delivered a memorandum addressed to "All Construction Personnel" reminding Otis employees about the Otis safety harness policy. DeRay received a copy of this memo. On February 5, 2002, Accarpio approached DeRay and told him that he must wear a safety harness because it was Otis' policy. If DeRay did not, he could be fired. DeRay continued to operate his elevator without a safety harness. On February 6, 2002, Larson delivered a letter to DeRay terminating his employment with Otis "[b]ecause you continue to violate the Otis safety policy regarding harnesses on construction sites . . . ."

On February 12, 2002, DeRay asked Local 91's secretary to type up another document, this one addressed to the "National Arbitration Committee". In the letter DeRay alleged Otis had violated the CBA by firing him without a written warning, and by failing to sufficiently address the harness issue. On February 22, 2002, DeRay wrote a letter addressed "To Whom it May Concern", with copies to Accarpio, Larson, Hastings, Donald Erkhart, and Ronald Koerbel, regional director for IUEC. This letter gave the recipients notice of DeRay's intent to file a lawsuit that DeRay described in his deposition as basically the same as the instant lawsuit.

Subsequently, on March 14, 2002, Accarpio, Koerbel, and Ernest Lowe, a labor relations representative of Otis, held a meeting to discuss one or more other grievances between Otis and the Union. According to Accarpio, the three discussed the

-5-

termination of DeRay, and agreed that DeRay's purported grievance had no merit.  It is unclear when DeRay was made aware of the results of this meeting.

On May 23, 2002, DeRay, a co-worker named Jude White, Accarpio, and Koerbel held a meeting to discuss DeRay's situation.  Koerbel claims that at this meeting he informed DeRay that his grievance had no merit.  Conversely, DeRay maintains that Koerbel did not comment on the merits of his grievance, but instead told him that he does not act on grievances that are not filed through the Local.  Koerbel also advised DeRay to write a letter to Otis labor relations.  DeRay wrote to Otis labor relations as instructed.  On June 4, 2002, Lowe wrote to DeRay informing him that Otis had decided that DeRay's termination was justified.  DeRay filed the instant lawsuit on December 4, 2002.

## II.    DISCUSSION

### a.    Accarpio and Koerbel

Defendants Accarpio and Koerbel[4] argue that DeRay's claims against them in their official capacities should be dismissed because, as individuals, they are immune to suit for breach of the duty of fair representation.

### 1.    Standard of Review

The court begins by noting:

Since most *pro se* plaintiffs lack familiarity with the formalities of pleading

---

[4]  Koerbel raised his immunity defense as part of a motion for summary judgment, thereby entitling him to a review of the issue using a broader set of evidence than is appropriate under FED.R.CIV.P 12(b)(6).  However, it is apparent that Koerbel's defense succeeds, under the more narrow pleading review under Rule 12(b)(6), so the court will examine both individuals under the same standard, given that there are no material issues of fact on the claim against Koerbel.

requirements, we must construe *pro se* complaints liberally, applying a
more flexible standard to evaluate their sufficiency than we would when
reviewing a complaint submitted by counsel . . . .  In order to justify
dismissal of the plaintiff['s] *pro se* complaint, it must be beyond doubt that
the plaintiff can prove no set of facts in support of his claim which would
entitle him to relief.

Lerman v. Bd. of Elections, 232 F.3d 135, 139-140 (2d Cir. 2000) (citations, footnote,

and internal quotation marks omitted).  In considering a motion to dismiss for failure to

state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated

in the complaint or in documents attached to the complaint as exhibits or incorporated

in the complaint by reference.  Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,

102 F.3d 660, 662 (2d Cir. 1996) (citation and quotation omitted).  In evaluating the

plaintiff's complaint, the court "must accept as true all factual allegations in the

complaint and draw all reasonable inferences in [the plaintiff's] favor."  Cruz v. Gomez,

202 F.3d 593, 596 (2d Cir. 2000) (citations omitted).  The court must construe "*pro se*

pleadings broadly, and interpret them to raise the strongest arguments that they

suggest."  Id. at 597.   However, "bald assertions and conclusions of law will not suffice

to state a claim . . . ."  Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), abrogated

on other grounds, Swierkiewicz v. Solema N.A., 534 U.S. 506 (2002) (internal citations

omitted).

       2.   Individual Immunity

    DeRay makes clear in his complaint that he is suing Ronald Koerbel and

Dominic Accarpio in their official capacities as representatives of IUEC and Local 91

respectively.  See Compl. at ¶¶ 5-6.  As this court noted in its Ruling on Defendants'

Motion to Dismiss [Dkt No. 30] granting dismissal as to defendants Russ Larson, Jeff

Hastings, and Ernest Lowe, while suits against individuals in their official capacity are necessary when the individuals are governmental officers and their state or federal employers have sovereign immunity, a plaintiff who sues a private entity does not contend with a sovereign immunity bar to suit.  See DeRay v. Larson, 283 F.Supp.2d 706, 709-710 (D.Conn. 2003).  The plaintiff may, as DeRay has done, bring a cause of action against the entities themselves, in this case Local 91 and IUEC.  Therefore, "official capacity" suits against individuals within a private entity are unnecessary. Binding precedent grants immunity to the individual union defendants in this situation. Specifically, the Second Circuit has held that individual union members are immune to suits for breach of the duty of fair representation.  See Morris v. Local 918, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999).  Following the reasoning laid out more fully in this court's earlier decision and relying on the Morris decision, the court dismisses DeRay's claims against Accarpio and Koerbel in their official capacities. Accarpio's[5] Motion to Dismiss and Koerbel's Motion for Summary Judgment are granted.

> **b.    Joint Motion to Strike**

The defendants in this suit moved jointly to strike sur-replies and the attached Affidavit of Jude White filed by DeRay in response to the defendants' reply

---

[5]  Accarpio makes reference in his memorandum in support to statements made by DeRay in his deposition concerning the issue of "official capacity".  See Def's Mem. Supp. Mot. to Dismiss at 3 n.3.  As noted earlier, it is inappropriate to rely on filings outside of the complaint when considering a motion to dismiss.  While Accarpio erred in referencing DeRay's deposition, the court did not consider this information when deciding the motion.  The complaint made clear on its face in what capacity Accarpio and Koerbel were being sued.

memoranda.[6]  Defendants correctly point out that sur-replies are not permitted under the Local Rules of the District of Connecticut.  See Local R.Civ.P. D.Conn. 7.  See also Root v. Liston, No. Civ. A. 3:03-CV-949 (JCH), 2003 WL 22937686, at *3 (D. Conn. Dec. 10, 2003).  However, as previously noted, district courts must "construe pro se [pleadings] liberally, applying a more flexible standard" to them.  See e.g., Lerman, 232 F.3d at 139-140.  Also, the court must construe "pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  See Cruz, 202 F.3d at 597 (citations omitted).  Guided by these standards and the principals that underlie them, the court finds it appropriate to interpret DeRay's filings as containing requests for leave to file sur-replies.  Having done so, the court hereby grants DeRay's requests for leave and defendants' joint motion to strike is denied.

### c.    Motions for Summary Judgment

#### 1.    Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See, FED.R.CIV.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is

---

[6]  The defendants also moved for leave to file replies to DeRay's sur-replies.  That motion is **DENIED**.

genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying

-10-

Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may

not rely on conclusory statements or an argument that the affidavits in support of the

motion for summary judgment are not credible).  "These principles apply equally

whether summary judgment is granted on the merits of the claim, or on an affirmative

defense such as the statute of limitations."  Buttry v. Gen. Signal Corp., 68 F.3d 1488,

1492 (2d Cir. 1995) (citing Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).

> 2.    Statute of Limitations

Otis, Local 91, and IUEC argue, *inter alia*, that DeRay's suit is untimely because

the applicable statute of limitations period expired before DeRay filed suit on December

4, 2002.  See Otis Mem. Supp. Summ. J. at 13; see also IUEC Mem. Supp. Summ. J.

at 27; Local 91 Mem. Supp. Summ. J. at 13.  DeRay's hybrid Section 301/fair

representation claim is governed by a six-month statute of limitations.  See Cohen v.

Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir. 1995) (citing DelCostello v. Int'l

Bhd. of Teamsters, 462 U.S. 151, 169-171 (1983)).  As the Supreme Court noted in

DelCostello, federal law favors a rapid final resolution to labor disputes.  See 462 U.S.

at 168 (deciding hybrid 301/fair representation claims are more appropriate governed

by the six-month statute of limitations of Section 10(b) of the National Labor Relations

Act rather than the 3-year state malpractice statute).  The statutory clock begins when

the cause of action accrues.  See Santos v. Dist. Council, 619 F.2d 963, 969 (2d Cir.

1980).

Otis and IUEC argue that DeRay's February 22, 2002 letter threatening suit

started the statute of limitations clock.  See Otis Mem. Supp. Summ. J. at 13; see also

IUEC Mem. Supp. Summ. J. at 27.  Local 91 contends that, to the extent the clock did

not start earlier, the May 23, 2002 meeting between DeRay, White, Accarpio, and

Koerbel certainly gave DeRay notice that his claim had accrued.  See Local 91 Mem.

Supp. Summ. J. at 13.  DeRay counters that he did not become aware, and could not

have become aware, that all efforts to resolve his grievance under the CBA grievance

procedures "had come to a close" until he received the June 4, 2002 letter from Ernest

Lowe informing him that Otis had found his termination to be justified.  Pl's Response to

Defs IUEC & Koerbel's Reply Br. & Mot. Summ. J. at 2.  If DeRay is correct, his cause

of action filed on December 4, 2002 is not time-barred.

It is well settled in the Second Circuit that "the cause of action accrue[s] no later

than the time when [the] plaintiff[ ] knew or reasonably should have known that such a

breach [of the duty of fair representation] had occurred . . . ."  Cohen, 68 F.3d at 67.

(quoting Santos, 619 F.2d at 969.).  The claim accrues "even if some possibility of

nonjudicial enforcement remained."  Id.  "Where a union refuses or neglects to assist a

union member, decides to stop assisting a union member, or acts against the interests

of a member, a breach of duty by the union is apparent to the member at the time [he]

learns of the union action or inaction about which [he] complains."  Ghartey v. St.

John's Queens Hosp., 869 F.2d 160, 165 (2d Cir. 1989) (omitting citations).

Thus, the first question is: when did DeRay know, or should DeRay have known,

that IUEC and Local 91 were acting in a manner adverse to his interests, or failing to

act in his favor?  The facts in the record, when viewed to resolve all ambiguities and

draw all inferences in favor of DeRay, initially raise three possible dates: February 22,

2002; May 23, 2002; and June 4, 2002.

I.    DeRay's February 22, 2002 Letter

Otis and IUEC argue that the latest possible date DeRay had actual knowledge of his cause of action was February 22, 2002.  DeRay wrote a letter on February 22, 2002 addressed "To Whom It May Concern", with copies to Accarpio, Larson, Hastings, Donald Erkhart, and Koerbel, giving notice of his intent to file suit.  See DeRay Dep. Ex. 9 at 1.  This letter referenced his February 6, 2002 termination, and claimed that such termination violated the CBA.  See id.  This letter was written more than two months after his first written grievance letter on December 10, 2001, sixteen days after his termination on February 6, and ten days after he wrote his second grievance letter on February 12, 2002.  At his deposition, DeRay admitted that he intended to base the lawsuit referred to in the February 22 letter on the same grounds as the instant lawsuit.  See DeRay Dep. at 84.  DeRay also admitted this fact in a Rule 56(a)(2) statement of facts in dispute.  See DeRay Local Rule 56(a) 2 Disputed Issues of Material as Fact Submitted by Local 91 at ¶¶ 34-35.[7]  It appears from this admission that DeRay actually knew facts that would form the basis for a claim that Local 91 and IUEC were in breach of their duty of fair representation by failing to act on his grievance letters concerning

---

[7]  The court notes that in a similar document filed the following day [Dkt. No. 61], DeRay changed his responses to paragraphs 34 and 35 from "Admitted" to "Denied".  However, Local Rule 56(a) requires such denials to be supported by "a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local R.Civ.P. D. Conn. 56(a)(3).  The denials found in Docket No. 61 are unsupported.

Even if DeRay had supported these changes to his earlier submission with an affidavit, it would still have been insufficient to create an issue of fact.  DeRay unambiguously admitted at his deposition that he intended in February to sue on the same grounds that he eventually sued in December.  He cannot create an issue of fact by changing that answer later, even in a sworn affidavit.  See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  He certainly cannot create an issue of material fact by changing his story while citing to no support whatsoever.

the safety harness requirement and his subsequent termination.

DeRay agrees that this would start the statute of limitations clock "if the notice and grievances were ignored." Pl's Response to Defs IUEC & Koerbel's Reply Br. & Mot. Summ. J. at 1. However, DeRay argues that this was not the case. DeRay refers to the minutes of a February 28, 2002 Executive Board meeting of Local 91 that noted the union would handle the claims immediately, and to an alleged conversation with a Board member named Jim Behan who purportedly asked DeRay to hold off on the lawsuit until Local 91 had a chance to resolve the grievance. See id. DeRay argues that this shows that the Union did agree to work on his behalf, and that he did not again become aware that all efforts under the CBA had ceased again until receiving the aforementioned letter from Ernest Lowe on June 4, 2002. See id. at 2.

Contrary to DeRay's belief, a representation by Local 91 that it would begin to pursue his grievances if he withheld on filing a lawsuit is not an indication that he did not know of his cause of action. It could, however, give rise to a claim for equitable estoppel on DeRay's behalf. If DeRay knew of his cause of action, but did not file his suit within the statute of limitations period solely because of his reasonable reliance on a misrepresentation by the Union, the Union would be estopped from asserting a statute of limitations defense. See Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168, 176 (2d Cir. 2000).

In order to invoke the doctrine of equitable estoppel, the plaintiff must show that "(I) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it, and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment." Id. (quotation marks and citation omitted).

-14-

However, "[a]n equitable estoppel cannot indefinitely extend the limitations period.

Thus, [o]nce the circumstances inducing reliance are exposed, the plaintiff's obligation

to timely file is reimposed." Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1494 (2d Cir.

1995) (quotation marks and citation omitted).  The benchmark for timeliness in this

situation is the unused portion of the statute of limitations.  See id.  Thus, if a limitations

period is interrupted at the midway point by events giving rise to equitable estoppel,

when the plaintiff's obligation is reimposed, he generally will be held to have the

remaining portion of his statutory period to file suit.  See, e.g., id.

        Assuming, *arguendo*, that the statements made by Local 91 and its

representatives on February 28 constituted a misrepresentation that DeRay reasonably

relied on to his detriment, the timeliness clock stopped after six days of the six-month

statutory period had run.  By DeRay's own admission, he concluded that all fruitful

efforts under the CBA had ceased as of June 4, 2002.[8]  At this point, the statute of

limitations clock began again.  DeRay filed suit on December 4, 2002, exactly six

months later.  Therefore, taking into consideration the six days that had already run

prior to any tolling due to equitable estoppel, DeRay filed his suit six days after the

appropriate statute of limitations expired.

                ii.    The May 23, 2002 Meeting

        Local 91 contends that DeRay had actual notice that the Union had stopped

acting on his behalf prior to June 4, 2002.  On May 23, 2002, DeRay and Jude White

---

        [8]  As is discussed in subsection II(c)(2)(ii), *infra*, DeRay received actual notice that the
Union was no longer acting on his behalf on May 23, 2002, restarting the statute of limitations
clock well before June 4.

met with Accarpio and Koerbel.  According to DeRay, at this meeting Koerbel informed

him that he could not proceed with his grievance claims because "he did not act on

grievances that are not filed through the Local."  Pl's Response and Opp. to IUEC Local

91 Reply Dated February 3, 2004 at 6.  [Dkt. No. 78] DeRay also stated in his

deposition that Koerbel told him that he could not pursue the grievance because, "in

order for [Koerbel] to be involved, it had to be in some proper form that I was unable to

obtain."  DeRay Dep. at 89.  Additionally, Koerbel suggested that DeRay write to Otis

human resources.  See Pl's Response and Opp. to IUEC Local 91 Reply Dated

February 3, 2004 at 7.

Jude White had similar recollections.  He remembered Koerbel telling DeRay

that "[he could not] pursue a grievance that has not properly been filed, but if you can

present your case in an orderly manner we'll see what can be done."  White Aff. at 1.

Also, when Koerbel suggested DeRay write to Otis human resources, White got the

impression that "Ron Koerbel was ready willing and able to offer union support following

the outcome of Otis human resources."  Id.  As noted earlier, DeRay argues that the

June 4, 2002 letter from Otis' Ernest Lowe ratifying DeRay's termination finally

convinced him that "his efforts under the CBA had come to a close . . . ."  Pl's

Response to Defs IUEC & Koerbel's Reply Br. & Mot. Summ. J. at 2.

Once again, DeRay appears to mistake actual knowledge of his cause of action

with a reason not to act on that knowledge.  Crediting for purposes of this motion,

DeRay and White's memory of the May 23 meeting, it is clear that Koerbel told DeRay

that he could not pursue a grievance for DeRay.  Thus, DeRay had actual knowledge

that his cause of action for breach of the Union's duty of fair representation had

accrued.  This knowledge started the clock on DeRay's six-month statute of limitations.

See Buttry, 68 F.3d at 1492.  If there were no intervening factors, the statutory period

for filing suit would end on November 23, 2002.

However, as noted earlier, the court is bound to construe "*pro se* pleadings

broadly, and interpret them to raise the strongest arguments that they suggest."  Cruz,

202 F.3d at 597 (citations omitted).  In this case, DeRay's strongest argument is to

invoke the doctrine of equitable estoppel based on two of Koerbel's statements.  First,

the statement that Koerbel would help DeRay once he got his grievance in order and

filed properly, and second, the implication White gleaned from Koerbel's suggestion

that DeRay write to Otis human resources.

As mentioned above, in order to invoke the doctrine of equitable estoppel, a

plaintiff must show that the defendant made a misrepresentation of fact that the plaintiff

relied on to his detriment.  See Wall, 224 F.3d at 176.  In Wall, the plaintiffs brought suit

in an attempt to re-enter the union to which they had previously belonged.  When they

petitioned the union for readmission, they were rejected.  See id.  In their rejection

letters, the union told them that they could become union members again once they

became employed.  See id.  The plaintiffs spent a significant amount of time attempting

to gain relevant employment, and finally did so.  See id.  However, when one plaintiff

attempted to regain his membership in the union upon re-employment, the union

rejected him again.  See id.  The Second Circuit held that the union's refusal to readmit

the plaintiffs upon their gaining employment proved that the union's earlier statements

were misrepresentations, and the plaintiff's actions showed that they had relied on

those misrepresentations.  See id. at 177.  Therefore, the union was equitably estopped

-17-

from asserting a statute of limitations defense because, but for the plaintiff's reliance on the union's misrepresentations, the plaintiff's suit would have been timely.  See id.

DeRay's situation is demonstrably different.  DeRay claims that he relied on Koerbel's statements that, if DeRay got his grievances in proper order, or that once Otis human resources responded to a letter from DeRay, Koerbel would pursue his claims. See Pl's Response and Opp. to IUEC Local 91 Reply Dated February 3, 2004 at 6-7; see also White Aff. at 1.  Had DeRay followed up with Koerbel, and had Koerbel refused DeRay any further assistance, it would appear that DeRay faced the same situation as the plaintiffs in Wall.

That is not the case here, however.  There is no evidence in the record that DeRay ever asked Koerbel to pursue his grievances after receiving Lowe's letter on June 4.  Also, there is no evidence that DeRay ever initiated an "Oral Step" under the CBA in order to get his grievances "in order".  In fact, DeRay offers no evidence that he did anything following his receipt of the Lowe letter, other than file the instant suit on December 4.  This absence of evidence is corroborated by DeRay himself who clearly states that, after receiving the Lowe letter, he "reasonably determined his efforts under the CBA had come to a close . . . ."  See Pl's Response to Defs IUEC & Koerbel's Reply Br. & Mot. Summ. J. at 2.

Unlike the union's representations in Wall, Koerbel's statements have never been proven false.  While the plaintiffs in Wall approached the union and requested they act on their previous representations, there is no evidence DeRay did so here. DeRay never initiated an Oral Step, so Koerbel's statement that Koerbel could pursue a properly presented grievance was never tested.  Also, DeRay never requested Koerbel

-18-

to act on Lowe's letter.  Therefore, DeRay never disproved any impression Koerbel

gave White and DeRay that this step could lead Koerbel to further pursue DeRay's

claims.  In sum, based solely on DeRay's own evidence, Koerbel's May 23 statements

have not been shown to be misrepresentations.  Without a misrepresentation for DeRay

to rely upon, he cannot invoke the doctrine of equitable estoppel.  See, e.g., Buttry, 68

F.3d at 1493.  Without equitable estoppel, DeRay's argument that the statute of

limitations clock started on June 4, 2002 cannot succeed on the undisputed facts.

Therefore, the six-month statute of limitations expired no later than November 23, 2002.

It is clear that DeRay became actually aware of the existence of his cause of

action on or before either February 22, 2002 or May 23, 2002.  However, DeRay did not

file suit until December 4, 2002, more than six months after either of those two dates.

Resolving "all ambiguities and draw[ing] all inferences in favor of [DeRay]," Aldrich, 963

F.2d at 523, the court concludes that DeRay has presented no facts from which a

reasonable jury could conclude that the present action is not time-barred.  Therefore,

the Motions for Summary Judgment filed by IUEC, Otis, and Local 91 are granted.

## III.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Dominic Accarpio [Dkt. No.

36] and the Motion for Summary Judgment of Ronald Koerbel [Dkt. No. 37] are

**GRANTED** based on an individual's immunity to suit for breach of the duty of fair

representation.  The Motions for Summary Judgment of IUEC, Local 91, and Otis [Dkt.

Nos. 34, 37, & 49] are granted on statute of limitations grounds.  The defendants' Joint

Motion to Strike [Dkt. No. 79] is **DENIED**.  The defendants' Joint Motion for leave to file

replies to DeRay's sur-replies [Dkt. No. 79] is also **DENIED**.  The Clerk is hereby

ordered to close the case.

**SO ORDERED**.

Dated at Bridgeport, Connecticut this 29th day of September, 2004.


/s/ Janet C. Hall
_____    Janet C. Hall
United States District Judge